UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Reginald Harris | : | PRISONER |
| | | 3:03CV665(RNC)(DFM) |
| v. | : | |
| John Armstrong, et al | : | MAY 7, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS**

Pursuant to Rules 12(b)(6)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the defendants in the above-captioned matter hereby respectfully move to dismiss this matter in its entirety for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act, for lack of personal involvement, and on the basis of qualified and sovereign immunity. The claims for non-monetary damages should be dismissed as moot, and all claims should be dismissed for failure to state a claim upon which relief can be granted

**Facts:**

The defendants address this motion to the Amended Complaint filed by the plaintiff in February of 2003 as that is the operative complaint in this matter (hereinafter "the Amended Complaint "). The Amended Complaint does not specify whether it is brought against the defendants in their individual nor official capacity. The plaintiff brings this action against former Commissioner of Correction John Armstrong, Dr. Minzger Tung, and Supervising Nurse Joan Dobson.

The plaintiff claims that he is and was an inmate at the Garner Correctional Institution. Amnd. Com. ¶ 2. He claims that he is a dialysis patient requiring dialysis that he receives three

times weekly outside of the prison. Amnd. Com. ¶ 2. He claims that he needs the dialysis or a kidney transplant or he will die. Amnd. Com. ¶ 2.

The Amended Complaint describes the defendant John Armstrong as the Commissioner of the Connecticut State prisons. Amnd. Com. ¶ 3. The plaintiff alleges that Armstrong "is legally responsible for the overall safety and security of all of this state's prisons, medical welfare inclusively." Amnd. Com. ¶ 3. The Amended Complaint describes Mingzer Tung as a doctor at Garner, and describes defendant as "responsible for the overall health and medical maintenance of all prisoner held at Garner." Amnd. Com. ¶ 4.

With regard to the defendant Joan Dobson, the Amended Complaint alleges:

> [She] is the supervising nurse who also supports and reflects with Dr. Tung of the Garner prison. She is also responsible for assisting him with lesser needs to help ease Dr. Tung's work load. An adequate screening process when run properly as to a prisoner's medical needs.

Amnd. Com. ¶ 5.

Without stating an approximate date or who was directly involved, or even whether one or more of the defendants was involved, the plaintiff alleges that "on several occasions plaintiff's diet was ignored, incomplete or not even adequate with doctors of the dialysis units orders nor the dieticians." Amnd. Com. ¶ 7. Again without a date, but in more specific terms, the plaintiff alleges that "several times" Dr. Tung has disregarded orders or recommendations of the "dialysis Department". Amnd. Com. ¶ 8. The plaintiff does not allege the manner in which these orders or recommendations were disregarded, or by whom. He further alleges that Dr. Tung "systematically denied plaintiff's dialysis treatments on several occasions" as well as denying the plaintiff a kidney transplant. Amnd. Com. ¶ 9. He further alleges that Dr. Tung refuses or refused to see the plaintiff and discontinued medications previously distributed to the

2

plaintiff without any consultation or substitutes. Amnd. Com. ¶¶ 10, 11. Again, no dates or specific instances are alleged.

The plaintiff does not claim anywhere in the Amended Complaint that he has grieved the issues that are the subject of the complaint. Rather, he alleges, "Constantly medical claims my issues when grieved are strictly custody—(prison administrative) and not medical." Amnd. Com. ¶ 12. He makes a vague allegation that Nurse Dobson "denies plaintiff things that are required to ease his medical problems. She sometimes takes a personal interest to shorten what plaintiff already is receiving for no medical reason. Just an act of wickedness." Amnd. Com. ¶ 13. This allegation is not specific as to time or item.

The plaintiff makes a complaint about how Nurse Dobson responded to medical grievances without alleging that he grieved the subject matter of this lawsuit. Amnd. Com. ¶ 14. He claims that she took the full 30 days to respond, or converted emergency grievances into non-emergency grievances "giving her 30 days to do nothing." Amnd. Com. ¶ 14.

The plaintiff claims John Armstrong was "keeping plaintiff at Garner" where it was a longer trip to another facility for the purposes of receiving dialysis. Amnd. Com. ¶ 15.

The Amended Complaint then alleges that the defendants on unspecified dates "began working at systematically causing plaintiff to miss or refuse his treatments." Amnd. Com. ¶ 16. This alleged conspiracy to deprive the plaintiff of his treatment is vague, not only citing no dates but no specific acts either. Amnd. Com. ¶ 17. The plaintiff concludes that "defendants were all being negligent in a unprofessional manner." Amnd. Com. ¶ 17.

The plaintiff seeks monetary damages as well as injunctive and declaratory relief.

**Argument:**

A. **Applicable Standard**

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff.  *See Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911 (1992).  The function of a motion to dismiss is merely "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Younger v. Chernovetz*, 792 F. Supp. 173, 174 (D. Conn. 1992), *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Frasier v. General Electric Co*., 930 F.2d 1004, 1007 (2d Cir. 1991).

In *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) the Court held that "[C]ertain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss."  Complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed.  *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977).  Thus, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc*., 687 F. Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted).  A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

4

B. **All Defendants are Immune from Suit for Money Damages Insofar as they are Sued in their Official Capacities**

The Eleventh Amendment provides a constitutional limitation on federal jurisdiction over suits for damages brought by a citizen against a state or state agencies. *Pennhurst State School & Hospital v. Halderman (Pennhurst II),* 465 U.S. 89, 98 (1984); *Ex parte State of New York No. 1*, 256 U.S. 490, 491 (1921). It is well established that a suit against a state official in his or her official capacity is, in actuality, a suit against the State, and the State is the real party in interest, thus the Eleventh Amendment immunity extends to suits against state officials in their official capacity. *Brandon v. Holt,* 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Schiff v. Kerrigan*, 625 F. Supp. 704, 707 n.7 (D. Conn. 1986). It is likewise well established that the doctrine of sovereign immunity embodied by the Eleventh Amendment of the United States Constitution precludes a suit for damages against a state or its agencies brought pursuant to §1983. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

Absent a congressional override, a sovereign's Eleventh Amendment immunity may be only waived by an unequivocally expressed consent to suit. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985); *Pennhurst II, supra*, 465 U.S. at 99. This consent may take one of two forms. It may take the form of an explicit statutory exception as to a designated class of claims. *Florida Dept. of Health v. Florida Nursing Home Association*, 450 U.S. 147, 150 (1981); *Owner-Operators Independent Drivers Assoc. of America v. State of Connecticut*, 209 Conn. 679, 684-85 (1989). In Connecticut, an abrogation of sovereign immunity may also take the form of a claim presented to the Connecticut Commissioner of Claims pursuant to Conn. Gen. Stat. § 4-141 *et seq*. In the absence of either exception to the sovereign immunity of the State of

Connecticut, the Eleventh Amendment bars any claim against the State or a state official in their official capacity for money damages.

In the instant case, the plaintiff has alleged no statutory or other consent to suit, and thus any and all claims for damages against the defendants sued in their official capacity should be dismissed.

**C.    <u>Failure to Allege Exhaustion Renders Claim Insufficient</u>**

Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act (hereinafter "PLRA"), a prisoner must exhaust administrative remedies before bringing suit in federal court under federal law:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prison confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This provision requires complete exhaustion in accordance with the administrative procedures Connecticut provides its prisoners. *Porter v. Nussle, supra.* The Supreme Court has made it clear that there are no exceptions to the PLRA's exhaustion requirement:

> We hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

*Id.* at 532.

In *Nussle,* the United States Supreme Court upheld a dismissal under Rule 12(b)(6) based upon Connecticut's grievance procedure, as provided for in State of Connecticut Department of Correction Administrative Directive 9.6. *Id.*

The Second Circuit has recently reiterated that dismissal is appropriate when a plaintiff inmate has had ample opportunity to exhaust and has failed to do so. *Berry v. Kerik,* Docket No. 03-0017, -0141, April 29, 2004, attached. In the absence of a clear allegation that the issues presented in the complaint have been grieved, the complaint should be dismissed.

**D.**     **Mootness Deprives the Court of Jurisdiction Over Non-monetary Claims**

The United States Supreme Court has ruled that there must be a "substantial controversy" between parties in order for a court to maintain jurisdiction over a matter. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the District Court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir. 2002), *quoting, Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). A matter that has become moot presents no actual case or controversy. *Altman v. Bedford Central School District,* 245 F.3d 49, 70-71 (2d Cir. 2001). The federal courts "do[] not sit to decide arguments after events have put them to rest." *Doremus v. Board of Ed.,* 342 U.S. 429 (1952); *see also Golden v. Zwickler,* 394 U.S. 103, 108 (1969). The plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exits. *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996).

"[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the Court on its own motion, Fed. R. Civ. P. 12(b), the Court may inquire, by affidavits or otherwise, into the facts as they exist." *Scherer v. The Equitablelife Assurance Society of the United States,* 347 F.3d 394, 401 (2d Cir 2003), *quoting Land v. Dollar,* 330 U.S. 731 n. 4 (1947) (citations omitted), *overruled on other grounds, Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682 (1949). "A District Court may consult evidence to decide a Rule

7

12(b)(1) motion. It must do so if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Id.* at 401-02 (internal cites, quotes omitted).

As the plaintiff's current address, on file with this Court indicates, the plaintiff is no longer housed at Garner but is now at MacDougall Walker Correctional Institution. "[W]hen a prisoner is released from prison, there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief." *Van Deusen v. Evatt,* 1994 U.S. App. LEXIS 15157 (4th Cir.) (internal citations and quotation marks omitted), attached, *cert. denied*, 513 U.S. 972 (1994); *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977); *see also Scher v. Chief Postal Inspector*, 973 F.2d 682, 683 (8th Cir. 1992); *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (per curiam). The claims of the plaintiff seeking injunctive and declaratory relief are no less subject to dismissal as moot. There is no non-monetary relief whatsoever that a Court can currently award to him other than the speculative relief that if the plaintiff is re-incarcerated at Garner, he might not be subject to the same policies.

When an inmate is discharged, or when he is transferred to a different facility than the one where the defendants are employed, his claims for injunctive relief are generally mooted. *Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir. 2002), *citing, Prins v. Coughlin,* 76 F.3d 504 (2d Cir. 1996) (*per curiam).* "This result flows logically from the more generalized proposition that 'an actual controversy must be extant at all stages of the case, not just at the time the complaint is filed." *Id.*, *citing, Beyah v. Coughlin,* 789 F.2d 986, 988 (2d Cir. 1986). The Second Circuit has long held that an inmate's request for declaratory and injunctive relief against

correctional staff becomes moot when the inmate is discharged or transferred to a different correctional institution. *Nicholson v. Murphy,* 2003 U.S. Dist. LEXIS 22165, September 19, 2003 (D. Conn. 2003), Kravitz, *J.,* attached, *citing, Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir. 1976). *See also Arriola v. Eady,* 2003 U.S. Dist. LEXIS 15954, August 26, 2003, (D. Conn. 2003), Droney *J.*, attached.

Not only is the plaintiff now in a different facility, but the defendant Armstrong is no longer the Commissioner of Correction. The plaintiff's claims for non-monetary damages should be dismissed as moot.

### E.     Lack of Personal Involvement

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode* 423 U.S. 362, 370-71 (1976), *quoting* 42 U.S.C. §1983. Where damages are sought in a §1983 action, the defendant(s) must be responsible for the alleged constitutional deprivation. Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under §1983. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033 (1973), *rev'd on other grounds, Graham v. Connor*, 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087 (1978). Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under § 1983. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 692-95 (1978). Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to

support their liability for wrongful acts," not merely their "linkage in the chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir. 1974). A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation. *Williams v. Smith,* 781 F.2d at 323-24; *Meriwether v. Coughlin,* 879 F.2d 1037 (2d Cir. 1989). "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986). An official cannot be held liable merely because he or she occupies a high position in the prison hierarchy. *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).

The allegations against the defendant Armstrong are clearly only made due to his former position within the Department of Correction. Thus, insufficient personal involvement is alleged as to him, and this entire action is dismissable as to him on that basis. Moreover, many allegations against Dr. Tung and Nurse Dobson are likewise insufficient as the allegations involve unnamed medical personnel without any specific reference to Dr. Tung or Nurse Dobson. For example, paragraph 7 alleges, "On several occasions, plaintiff's diet was ignored, incomplete or not even adequate with doctors of the dialysis units orders nor the dieticians." Amnd. Com. ¶ 7. The defendant Dobson is not alleged to have had anything to do with plaintiff's medical care other than a vague allegation of "withholding things", but rather is alleged to have been unsatisfactory in her responses to plaintiff's grievances. Thus, to the extent

10

the Court considers a claim for indifference to medical needs to be alleged, the defendant Dobson is not alleged to have had sufficient personal involvement in such indifference, and those claims should be dismissed as to the defendant Dobson on that basis.

The plaintiff complains of a long drive for his dialysis treatments, (¶ 15), but does not claim that any one of the defendants was responsible for his placement in a certain correctional facility. All of these vague complaints not related to any one person are subject to dismissal for lack of personal involvement.

### F. Conspiracy and Other Conclusory Claims Insufficient

The Amended Complaint seems to make broad, conclusory allegations about an alleged conspiracy between the three defendants and/or the defendants and unnamed medical personnel. Amnd. Com. ¶ 5. The Amended Complaint also makes a number of broad allegations, undated and not specific to any person. Even the complaints that are directed at Dr. Tung are vague and conclusory. For example, the plaintiff does not state any specific manner in which dialysis sessions were missed, or how the "defendants began working at systematically causing him to miss or refuse his treatments." Amnd. Com. ¶ 16.

The Second Circuit "has repeatedly held that a complaint containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed. Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977) (internal quotes, citations omitted); *see also Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir. 1976) ("Complaints relying on the civil rights statutes are plainly insufficient unless they contain some specific allegations of fact indicating a deprivation of civil rights, rather than state simple conclusions.").

In this case, the plaintiff's claims of conspiracy and collusion, as well as all of his claims of medical indifference, are unavailing. No specific acts are alleged and no dates are alleged, and thus the claims are subject to dismissal.

**G.     Claims Regarding Grievance Processing Not Cognizable**

The plaintiff's express complaints against the defendant Dobson are that she did not responds to his grievances in a way he thought appropriate, either responding that issues the plaintiff felt were medical were custodial, waiting too long to respond, or informing the plaintiff that his "emergency" grievances were not true emergencies (and even this portion of the complaint provides no specific dates or occasions). Judge Squatrito recently ruled that, even assuming a person responsible for responding to grievances does so improperly, violating the policy of the Department of Correction, no cause of action lies. See *Allen v. Armstrong,* 3:00CV1823(DJS)(TPS), Ruling and Order dated August 1, 2003, attached, pp. 16-17.

"A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Id.* p. 17, *citing Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir. 1993), *citing Engle v. Isaac,* 456 U.S. 107 (1982), *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99, 111 (1995). Judge Squatrito concluded, "[A]ny claim that the DOC defendants failed to follow the grievance procedures set forth in Administrative Directive 9.6 does not demonstrate the denial of a constitutionally or federally protected right and, thus, is not cognizable in this civil rights action." *Id.* The Court dismissed the action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

In this case, the plaintiff does not allege any specific harm that resulted to him when Nurse Dobson allegedly mishandled his grievances. This claim should be stricken as insufficient.

### H. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076 (1995). This doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their position of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987); *Harlow v. Fitzgerald,* 457 U.S. at 814. Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640. The doctrine of qualified immunity for government officials does not serve only as a defense from liability, but also *to dismiss* an action prior to the commencement of discovery when the plaintiff has failed to claim the violation of clearly established law or to allege the clear violation of a constitutional right. *Behrens v. Pelletier,* 516 U.S. 299, 306 (1996); *Jermosen v. Smith,* 945 F.2d 547, 553 (2d Cir. 1991), *cert. denied,* 503 U.S. 962 (1992).

13

In this matter, the allegations are such that they fail to claim the violation of any clearly established statutory or constitutional rights of which a reasonable correctional official would have known. In addition to the reasons set forth above, this action should also be dismissed as to all movants on the grounds of qualified immunity.

**Conclusion:**

For all of the reasons set forth above, this entire action is insufficient and the defendants urge that it be dismissed in its entirety.

>                                    DEFENDANTS,
>                                    John Armstrong, et al
>                                    RICHARD BLUMENTHAL
>                                    ATTORNEY GENERAL
>
> BY:   /s/_____
>       Lynn D. Wittenbrink
>       Assistant Attorney General
>       110 Sherman Street
>       Hartford, CT  06105
>       Federal Bar #ct08575
>       lynn.wittenbrink@po.state.ct.us
>       Tel: (860) 808-5450
>       Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 7th day of May 2004:

Reginald Harris # 13817
    MacDougall-Walker Correctional Institution
    1153 East Street South
    Suffield, CT  06080

>                          /s/_____
>                          Lynn D. Wittenbrink
>                          Assistant Attorney General