THOMAS JAMES VAN DEUSEN, Plaintiff-Appellant, v. PARKEREVATT; SAMMIE D. BROWN; MARTHA WANNAMAKER; RONNIE A. GRATE, Defendants-Appellees.

No. 93-6314

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

1994 U.S. App. LEXIS 15157

April 11, 1994, Argued
June 20, 1994, Decided

NOTICE:

[*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

SUBSEQUENT HISTORY: Reported in Table Case Format at: 28 F.3d 1212, 1994 U.S. App. LEXIS 24780.

Certiorari Denied October 31, 1994, Reported at: 1994 U.S. LEXIS 7716.

PRIOR HISTORY: Appeal from the United States District Court for the District of South Carolina, at Spartanburg. G. Ross Anderson, Jr., District Judge. (CA-92-1170-7).

DISPOSITION: AFFIRMED IN PART; VACATED AND REMANDED IN PART

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff prisoner sought review of a decision from the United States District Court for the District of South Carolina, which granted summary judgment in favor of defendant prison officials on grounds of qualified immunity in an action by the prisoner brought under 42 U.S.C.S. § 1983.

OVERVIEW: The prisoner, a youthful offender, contended that he was denied a protected liberty interest by being housed in a medium-security prison rather than in a minimum-security prison. The prisoner sought injunctive and declaratory relief, and money damages. The district court awarded summary judgment to the prison officials on grounds that the prison officials were immune from liability. The prisoner was conditionally released, then filed an appeal of the district court's decision. On appeal, the court affirmed summary judgment in favor of the prison officials and dismissed the injunctive and declaratory relief claim as moot since the prisoner was no longer in prison. The court held that because the prisoner was released, there was no longer a substantial controversy between the prisoner and the prison officials to warrant injunctive relief. The court held that even if the prisoner could have established that he had a protected liberty interest in being housed in a minimum-security prison, it could not have been shown that such a right was clearly established when the prisoner was incarcerated or that the prison officials acted unreasonably in failing to recognize such a right.

OUTCOME: The court affirmed the summary judgment in favor of the prison officials and against the prisoner, and the court directed that the prisoner's claims for equitable relief be dismissed as moot.

CORE TERMS: prison, prisoner, qualified immunity, offender, inmate, moot, declaratory relief, summary judgment, youthful, injunctive, incarceration, protected liberty interest, money damages, classification, conditionally, incarcerated, minimum-security, segregated, custody, discretionary authority, reasonable person, properly awarded, equitable relief, violating, sentenced, paroled, jail, per curiam, constitutional rights, unconditionally

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Justiciability: Case or Controversy
Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials

[HN1] To maintain an action against public officials, a plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct. When a prisoner is released from prison, there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief.

Civil Procedure: Justiciability: Case or Controversy
[HN2] The possibility that a paroled inmate might be returned to prison is not sufficient to generate an immediate case or controversy.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
[HN3] Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. An official's qualified immunity is not easily forfeited, and it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
[HN4] The objective inquiry necessary to assess an official's qualified immunity defense requires a court to determine whether that official could reasonably have thought his actions consistent with the rights they are alleged to have violated. In order for a public official to lose the protection of his qualified immunity, there must be a clearly established right at issue, and a reasonable person in the officer's position must have known he was violating that right.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights
Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
[HN5] Prison officials have broad administrative and discretionary authority over the institutions they manage and lawfully incarcerated persons retain only a narrow range of protected liberty interests.

COUNSEL: Argued: William Clifford Wood, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, Columbia, South Carolina, for Appellant.

Argued: W. Howard Boyd, Jr., GIBBES & CLARKSON, P.A., Greenville, South Carolina, for Appellees.

On Brief: Edwin P. Martin, Jr., Ronald K. Wray, II, GIBBES & CLARKSON, P.A., Greenville, South Carolina, for Appellees.

JUDGES: Before WILKINSON and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

OPINIONBY: ER CURIAM

OPINION:
OPINION

PER CURIAM:

In this case an inmate who has been released from prison seeks to maintain an action against prison officials based on alleged constitutional violations committed while he was incarcerated. We hold that the prisoner's release moots his claims for injunctive and declaratory relief, and that the prison officials are entitled to qualified immunity in his suit for damages under [*2] 42 U.S.C. § 1983. Accordingly, we affirm the district court's grant of summary judgment as to the damages claim, and we direct that the claims for equitable relief be dismissed as moot.

I.

Appellant Thomas J. Van Deusen pleaded guilty to the charge of involuntary manslaughter in May of 1991. Van Deusen, who was twenty-two years old at the time of sentencing, consented to sentencing under the South Carolina Youthful Offender Act ("SCYOA"). See S.C. Code Ann. § 24-19-50(c). In accordance with the Act's provisions, Van Deusen was sentenced to an indeterminate period of one to six years. Under guidelines established by South Carolina's Youthful Offender Review Board, Van Deusen could not be conditionally released, i.e., paroled, until he had served at least 24 months of his sentence.

In June 1991, Van Deusen was assigned to the Dutchman Correctional Institution after being classified as a medium custody inmate. Dutchman is a minimum-medium custody facility designated for the incarceration of inmates sentenced under the SCYOA. Approximately one year later, in April 1992, Van Deusen initiated this action against several South Carolina prison [*3] officials, alleging numerous violations of his constitutional rights. Van Deusen's principal claim was that he was being denied a protected liberty interest by being housed in a medium-security setting. Van Deusen claimed that, under § 24-19-60 of the SCYOA, prison officials were required to place him in a minimum security facility. Section 24-19-60 states:

Youthful offenders shall undergo treatment in minimum security institutions, including training schools, hospitals, farms, forestry and other camps, including vocational training facilities and other institutions and agencies that will provide the essential varieties of treatment.

The director, as far as is advisable and necessary, shall designate, set aside and adopt institutions and agencies under the control of the department and the division for the purpose of carrying out the objectives of this chapter. The director may further maintain a cooperative program with the Department of Vocational Rehabilitation involving the operation of reception and evaluation centers, utilizing funds and staffing services of the department which are appropriate for matching with Federal Vocational Rehabilitation funds.

Insofar[*4] as practical and to the greatest degree possible, such institutions, facilities and agencies shall be used only for the treatment of committed youthful offenders, and such youthful offenders shall be segregated from other offenders, and classes of committed youthful offenders shall be segregated according to their needs for treatment.

Van Deusen similarly claimed that his due process rights were being violated because he was not segregated from the general prison population and because he was being denied the treatment required under § 24-19-60. He also alleged several equal protection violations. Van Deusen sought injunctive and declaratory relief as well as money damages.

On January 15, 1993, a magistrate judge recommended that the prison officials be awarded summary judgment on all of Van Deusen's claims. The district court awarded defendants summary judgment in February 1993. Van Deusen then appealed. Subsequently, on April 29, 1993, Van Deusen was conditionally released from the Department of Corrections' custody, and he is no longer confined in one of the Department's institutions. Van Deusen was scheduled to be unconditionally released on May 28, 1994.

II.

Van Deusen's release[*5] from prison during the pendency of this appeal renders moot his claim for injunctive and declaratory relief. It is well settled that [HN1] to maintain an action against public officials, a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983) (citing *Golden v. Zwickler*, 394 U.S. 103, 109-10, 22 L. Ed. 2d 113, 89 S. Ct. 956 (1969)). When a prisoner is released from prison, there is no longer a "'substantial controversy'" between the former inmate and prison officials "'of sufficient immediacy and reality'" to warrant the issuance of either injunctive or declaratory relief. *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977) (quoting *Golden*, 394 U.S. at 108); see also *Scher v. Chief Postal Inspector*, 973 F.2d 682, 683 (8th Cir. 1992); *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) [*6] (per curiam). * Accordingly, we grant appellees' motion to dismiss Van Deusen's claims for injunctive and declaratory relief based on his allegedly improper treatment while in prison.

------------------Footnotes------------------

* The fact that Van Deusen had been only "conditionally released" before May 28 would not sustain the case or controversy. This is so for several reasons. First, Van Deusen would have been subject to reincarceration only if he had violated the terms of his conditional release as established in his Conditional Release Certificate. Thus, it was Van Deusen's own behavior which would determine whether he was unconditionally released on May 28. Second, [HN2] the possibility that a paroled inmate might be returned to prison is not sufficient to generate an immediate "case or controversy." See *McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail"). As a result, a prisoner's release on parole moots his claim for equitable relief in the same way that a prisoner's permanent release would.

------------------End Footnotes------------------

[*7]

III.

We are left to consider only Van Deusen's claim for money damages under *42 U.S.C. § 1983*. The district court properly awarded summary judgment to appellees on this claim because the prison officials are protected

against such damages here by their qualified immunity from suit under § 1983. See *Procunier v. Navarette, 434 U.S. 555, 561, 55 L. Ed. 2d 24, 98 S. Ct. 855 (1978); Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993)*.

The Supreme Court has explained that [HN3] "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)*. This qualified immunity from suit is necessary to avoid the social costs of repetitive claims against public officials, including "the expenses of litigation, the diversion of official energy from[*8] pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id. at 814*. An official's qualified immunity is not easily forfeited, and "it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)*.

[HN4] The objective inquiry necessary to assess an official's qualified immunity defense requires a court to determine whether that official "could reasonably have . . . thought [his actions] consistent with the rights they are alleged to have violated." *Anderson v. Creighton, 483 U.S. 635, 638, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)*; see also *Taylor v. Farmer, 13 F.3d 117, 120 (4th Cir. 1993)*. Therefore, in order for a public official to lose the protection of his qualified immunity, there must be a clearly established right at issue, and a reasonable person in the officer's position must have known he was violating that right. [*9] See *Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992)*. In the case before us, we can say neither that the rights alleged by Van Deusen were clearly established nor that reasonable people in the place of appellees would have known they were acting in violation of them.

First, although we need not address the merits of Van Deusen's claim that SCYOA § 24-19-60 gives rise to protected liberty interests including the right to minimum-security incarceration, we do note that no court has held that the statute does create such rights. In fact, both the district court and magistrate judge concluded in this case that the statute did not create a protected liberty interest in minimum-security incarceration. Similarly, we recognize that much of the statute's language, including the introductory phrases to the latter two paragraphs, accords a good deal of discretion to the Department of Corrections. Terms such as "as far as is advisable and necessary" and "insofar as practical and to the greatest degree possible" are generally insufficiently mandatory to create a protected interest. As a result, it would be impossible to hold that the rights Van Deusen relies[*10] upon were in any way "clearly established" at the time of his incarceration.

Second, it is equally difficult to show that reasonable persons acting as prison officials would have been aware that they were violating Van Deusen's alleged rights. The Supreme Court has repeatedly held [HN5] "both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms, 459 U.S. 460, 467, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983)*. The Court has explained that this "broad discretionary authority is necessary because the administration of a prison is 'at best an extraordinarily difficult undertaking.'" *Id. at 467* (quoting *Wolff v. McDonnell, 418 U.S. 539, 566, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974))*; see also *Meachum v. Fano, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976)*. Thus, the prison officials[*11] in this case acted with the knowledge that they have wide latitude in the management of their facilities. Indeed, South Carolina officials were recently told by this court that their state's prisoner classification scheme does not create a protected liberty interest in an individual prisoner's classification. See *Slezak v. Evatt, F.3d , No. 92-6864(4th Cir. Apr. 14, 1994), 1994 WL 125094*. While *Slezak* did not concern the classification of prisoners under the SCYOA, that decision once again indicated the degree of discretion that prison officials enjoy in managing the inmate population.

Even if Van Deusen could establish that § 24-19-60 creates a protected liberty interest in minimum-security incarceration for youthful offenders, it cannot be shown that such a right was clearly established when he was incarcerated or that South Carolina prison officials acted unreasonably in failing to recognize such a right. Accordingly, the appellees have properly asserted their qualified immunity as a defense against money damages in this case, and the district court properly awarded summary judgment to the prison officials on Van Deusen's claim for damages.

IV.

For the foregoing[*12] reasons, the judgment of the district court with regard to plaintiff's claims for money damages is affirmed. With regard to plaintiff's equitable claims, the judgment of the district court is vacated and the case remanded with directions to dismiss those claims as moot.

AFFIRMED IN PART; VACATED AND REMANDED IN PART

ALLAN C. NICHOLSON, PRISONER v. WARDEN BRIAN MURPHY, et al.

n1

n1 The defendants are Warden Brian Murphy, Major Carter, Captain Cleaver, Captain Luna, Lieutenant Fisher, Correctional Officer Howell, Counselor Wilson, Correctional Treatment Officer Haskins and Grievance Coordinator

Breedlove.

CASE NO. 3: 02CV1815 (MRK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 22165

September 19, 2003, Decided

PRIOR HISTORY: *Nicholson v. Murphy, 2003 U.S. Dist. LEXIS 25245* (D. Conn., June 19, 2003)

DISPOSITION: Defendants' motion to dismiss was granted and case was dismissed.

CORE TERMS: inmate, grievance, prison, injunctive relief, confinement, administrative remedies, disciplinary, motion to dismiss, process, filed, restrictive, correctional institution, prisoner, exhaust, confined, fail, declaratory, hardship, protected liberty interest, correctional facility, disciplinary hearing, housing unit, state law, demonstrating, atypical, housing, supplemental jurisdiction, exhaustion requirement, unusual punishment, failure to exhaust

COUNSEL: [*1] Allan C Nicholson, PLAINTIFF, Pro se, Somers, CT USA.

For Brian Murphy, Warden, I/O, Carter, Major, I/O, Cleaver, I/O, Luna, Capt, I/O, Fisher, Lt, I/O, Howell, Co, I/O, Wilson, Counsel, I/O, Haskins, Corr Treatment Ofcr, I/O, Breelove, Grievance Coordinator, I/O, DEFENDANTS: Robert Bishop Fiske, III, Attorney General's Office Public Safety & Special Revenue, Hartford, CT USA.

JUDGES: Mark R. Kravitz, United States District Judge.

OPINIONBY: Mark R. Kravitz

OPINION: RULING AND ORDER

Plaintiff Allan C. Nicholson ("Nicholson") is an inmate currently confined at the Osborn Correctional Institution in Somers, Connecticut. He brings this civil rights action pro se pursuant to *28 U.S.C. § 1915*. Nicholson alleges that, while he was confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, the defendants violated his rights under the *Fourth, Fifth, Eighth, Thirteenth* and *Fourteenth Amendments of the U.S. Constitution* and under Article first, sections seven, eight, twenty and seventeen of the Connecticut Constitution. The defendants have moved to dismiss this case on various grounds. For the reasons that follow, the defendants' motion is granted [*2] and this case is dismissed.

I. Standard of Review

When considering a *Rule 12(b)* motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*; *Thomas v. City of N. Y., 143 F.3d 31, 37 (2d Cir. 1998)*. Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See *Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)*; *Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)*. "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled

Case 3:02-cv-00665-DFM   Document 29-3   Filed 05/10/2004   Page 6 of 15

Page 13
2003 U.S. Dist. LEXIS 22165, *

to offer evidence to support his or her claims." *Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996)* (quoting *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)*) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents [*3] attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993)*. The Second Circuit "ordinarily requires the district courts to give substantial leeway to pro se litigants." *Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992)*.

II. Facts

The court accepts as true the following facts, which are taken from the complaint and attached exhibits.

On April 8, 2002, defendant Howell observed inmate Davenport, Nicholson's cellmate, using a make-shift punching bag tied to a rope that had been strung across the width of the cell. Defendant Haskins told inmate Davenport to remove the punching bag and informed him that he would receive a disciplinary report. Defendant Haskins woke Nicholson, who was sleeping in his bunk, and asked whether Nicholson also used the punching bag. Nicholson denied any involvement. Both inmates were ordered to leave the cell and go to the television room. Defendant Fisher removed the punching bag and spoke to inmate Davenport about the rope. Inmate Davenport was handcuffed and taken to the restrictive [*4] housing unit. En route, inmate Davenport told defendant Fisher that Nicholson was not involved in the incident. Nicholson also was handcuffed and taken to the restrictive housing unit.

Nicholson received a form stating that he was being held in administrative detention pending further investigation of the incident. Subsequently, he received a Class A disciplinary charge of violation of institutional rules. On April 10, 2002, defendants Luna and Wilson interviewed Nicholson regarding the disciplinary charge. Although Nicholson denied any knowledge of the rope, defendant Luna did not believe that he did not know that there was a rope in the cell.

On April 12, 2002, Nicholson was moved to unit H-2-76. This unit was used to house inmates found guilty of disciplinary charges. No disciplinary sanctions had been imposed on Nicholson and he had not pled guilty or been found guilty of the charge. Defendant Cooper told Nicholson that he should not be housed in that unit and said that he would look into the matter. The following week, defendant Cleaver informed Nicholson that the disciplinary charge had been reduced from Class A to Class B, and then to Class C.

Disciplinary hearings usually [*5] were held on Thursday. On April 18, 2002, Nicholson was not taken to a disciplinary hearing. The following week, Nicholson spoke to defendant Murphy, who referred Nicholson to defendant Carter. Defendant Carter told Nicholson that he would not be moving back to I-pod. Nicholson was not called for a disciplinary hearing on April 25, 2002, or May 2, 2002.

On May 7, 2002, defendant Cleaver told Nicholson that he would release him from H-2 if Nicholson were not called for a disciplinary hearing that Thursday. On May 10, 2002, Nicholson informed defendant Cleaver that he had not been called for a disciplinary hearing on the previous day. Nicholson was moved to I-2 that evening.

After two weeks, Nicholson got his "blues" which would allow him to return to his prison work assignment. He returned to his assignment at Graphic Arts on May 29, 2002. On July 15, 2002, Nicholson discovered that he was not being paid for working. He was told that he had to be reclassified and should not return to his work assignment until his name had been added to the school roster. On July 26, 2002, Nicholson was reclassified for work assignment purposes.

On May 12, 2002, Nicholson filed a Level 1 Grievance. [*6] On July 5, 2002, he received what he considered an inadequate response. On July 7, 2002, Nicholson filed a Level 2 grievance. On August 5, 2002, he filed a Level 3 grievance. On August 12, 2002, defendant Breedlove returned the Level 3 grievance and told Nicholson that it had not been timely filed. When Nicholson tried to explain why the grievance was timely, defendant Breedlove used derogatory language toward him. Nicholson reported the encounter with defendant Breedlove to defendant Murphy who said the defendant Breedlove was wrong. Defendant Murphy told Nicholson to give the grievance to defendant Luna who would forward it to Murphy. Although defendant Luna told Nicholson that he would see him later in the housing unit to get the grievance, he did not do so. On August 14, 2002, before Nicholson could see defendant Luna, defendant Breedlove returned a second grievance packet to Nicholson. The Level 2 grievance in the second packet indicated that the decision could not be appealed to Level 3.

III. Discussion

Nicholson includes in his complaint the following claims: (1) he was subjected to an unreasonable seizure and deliberate indifference to his right to be secure in his

Case 3:02-cv-00665-DFM   Document 29-3   Filed 05/10/2004   Page 7 of 15

Page 14
2003 U.S. Dist. LEXIS 22165, *

[*7] person when he was handcuffed, sent to the television room and then sent to the restrictive housing unit; (2) he improperly continued to be held in the sanctions unit when no disciplinary sanctions had been imposed; (3) he was falsely accused of having knowledge of the rope; (4) he was subjected to cruel and unusual punishment and denied due process and equal protection by the defendants' failure to comply with institutional rules and directives; (5) he was denied his rights under the *Thirteenth Amendment* when defendants approved him for return to his work assignment but failed to pay him.

The defendants move to dismiss this action. Nicholson opposes the motion and also has filed a motion for preliminary injunctive relief.

A. Nicholson's Motion for Preliminary Injunctive Relief

Nicholson has filed a motion for preliminary injunctive relief seeking access to the law library at Osborn Correctional Institution for five hours per week. In his motion, Nicholson alleges that Osborn Correctional Institution was "allowing access of approximately two to three hours per week to the library, however, in the previous two and a half weeks access has been completely denied."

Preliminary [*8] injunctive relief is designed "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. See id.; see also Omega World Travel, Inc. v. *Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (reversing district court's granting of motion for preliminary injunctive relief because injury sought to be prevented through preliminary injunction was unrelated and contrary to injury which gave rise to complaint).

The issues in this case concern events at MacDougall-Walker Correctional Institution which occurred prior to May 10, 2002, the date Nicholson was returned to a cell in I-2 unit. The request for preliminary injunctive relief concerns Nicholson's present inability to go to the prison law library at Osborn Correctional Institution for five hours per week. Thus, this request for preliminary injunctive relief is unrelated [*9] to the issues in the amended complaint and is not proper in this action.

Further, even if the request were proper, the motion should be denied. "[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981) (quoting *Medical Society of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977)). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." *Vorbeck v. McNeal*, 407 F. Supp. 733, 739 (E. D. Mo.), aff'd, 426 U.S. 943, 49 L. Ed. 2d 1180, 96 S. Ct. 3160 (1976).

In this Circuit the standard for injunctive relief is well established. To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *Brewer v. West Irondequoit Central Sch. Dist.*, 212 F.3d 738, 743-44 (2d Cir. 2000). [*10]

Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See *Drywall Tapers & Pointers Local 1974 v. Local 530*, 954 F.2d 69, 76-77 (2d Cir. 1992). Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice P65.04[3] (2d ed. 1995). Upon review of the record, the court determines that oral testimony and argument are not necessary. In this regard, the court notes that in his motion for a preliminary injunction, Nicholson himself states that "no oral argument [is] requested" and "testimony is not required."

In *Lewis v. Casey*, 518 U.S. 343, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. The Court held that to show that the defendants violated his right of access [*11] to the courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct. See *id. at 349*. As an illustration, the Court noted that if an inmate were able to show that, as a result of the defendant's action, he was unable to file an initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, he could state a claim for denial of access to the courts. See *id. at 351*. The Court, however, specifically disclaimed any requirement that prison officials ensure

Case 3:02-cv-00665-DFM   Document 29-3   Filed 05/10/2004   Page 8 of 15

Page 15
2003 U.S. Dist. LEXIS 22165, *

that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. See *id. at 355.*

Law libraries and legal assistance programs do not represent constitutional rights in and of themselves. They are only the means to ensure "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id. at 351* (internal quotation marks omitted). Thus, prisoners must demonstrate "actual injury" in order to [*12] have standing to bring a claim for denial of access to the courts. See id.

Nicholson has not alleged any facts demonstrating an actual injury. At this time, he has responded to the defendants' motion to dismiss and no further legal research is required or even alleged to be required. Should further legal research be needed, Nicholson may contact Inmates' Legal Assistance Program. Because Nicholson has no constitutional right of access to a prison law library and has not alleged facts demonstrating an actual injury, his motion for preliminary injunctive relief should be denied on the merits as well.

B. Claims for Declaratory and Injunctive Relief

The defendants have not addressed specifically Nicholson's claims for declaratory and injunctive relief. The Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. See *Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976).* See also *Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983)* ("The hallmark [*13] of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. See, e. g., *McAlpine v. Thompson, 187 F.3d 1213, 1215 (10th Cir. 1999)* (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement); *Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993)* (holding that inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison); *Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985)* (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit).

Nicholson indicates in his motion for injunctive relief that he has been transferred to Osborn Correctional Institution. Thus, his request for declaratory and injunctive relief against the defendants, correctional officials assigned to MacDougall-Walker Correctional Institution, [*14] is moot. These claims are dismissed pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)* which requires the court to dismiss, at any time, an action that fails to state a claim upon which relief may be granted.

C. Defendants' Motion to Dismiss

The court next considers the defendants' motion to dismiss the complaint. The defendants raise six grounds in support of their motion: (1) Nicholson failed to timely or completely exhaust his administrative remedies with regard to each claim asserted in the complaint before commencing this action; (2) the *Eleventh Amendment* bars all claims for damages based upon violation of state law and all claims for damages against the defendants in their official capacities for violation of federal rights; (3) Nicholson fails to state a claim for violation of any rights guaranteed by the *Fifth, Eighth* or *Thirteenth Amendments*; (4) Nicholson fails to state a claim for denial of his right to equal protection of the laws; (5) Nicholson fails to state a claim for denial of his *Fourteenth Amendment* right to substantive or procedural due process; and (6) the defendants are protected by qualified immunity.

1. Exhaustion of Administrative Remedies [*15]

The defendants argue that Nicholson failed to timely and completely exhaust his administrative remedies before commencing this action. In response, Nicholson argues that he filed grievances at Levels 1, 2 and 3, thereby exhausting his administrative remedies. Copies of Nicholson's grievances are attached to the complaint.

The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. "A defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [that plaintiff first exhaust all administrative remedies]." *Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999).* By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion. See also *Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W. D.N.Y. 2002)* ("in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense ...and ...defendant bears the burden of [*16] proving plaintiff's failure to comply with the exhaustion

requirement")(citations omitted); *Hallett v. New York State Dep't of Correctional Servs.*, 109 F. Supp. 2d 190, 196-97 (S. D.N.Y. 2000) (same). But see *Snider v. Melindez*, 199 F.3d 108, 111-14 (2d Cir. 1999) (creating an exception to this rule by permitting the court to dismiss a complaint sua sponte, after notice to the plaintiff and an opportunity to be heard, where the plaintiff's failure to exhaust administrative remedies under the PLRA is "readily apparent," or "unambiguously established in the record").

Nicholson has received notice of the exhaustion requirement in the defendants' motion to dismiss. In response, he argues that he complies with the exhaustion requirement, and he has attached copies of his grievance forms to the complaint. Nicholson does not argue that he made any other attempts to exhaust his administrative remedies with regard to the claims asserted in this case beyond the copies of grievances attached to his complaint and he has not provided the court with copies of any other grievance forms. Thus, because the court need not consider any material outside of the pleadings [*17] to resolve this issue, it may consider the exhaustion issue in deciding the motion to dismiss. See, e. g., *Willner v. Town of North Hempstead*, 977 F. Supp. 182, 191 (E. D.N.Y. 1997) (noting that court may consider affirmative defense on a motion to dismiss where defense is evident on the face of the complaint (citing *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

The Prison Litigation Reform Act, *42 U.S.C. § 1997e(a)*, requires an inmate to exhaust "administrative remedies as are available" before bringing an "action ...with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See *Booth v. Churner*, 532 U.S. 731, 741, 149 L. Ed. 2d 958, 121 S. Ct. 1819 (2001).

The statute expressly states that inmates must exhaust all available administrative remedies [*18] before filing suit. See *Webb v. Goord*, 340 F.3d 105 (2nd Cir. 2003); *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Therefore, any attempt to exhaust administrative remedies after the case was filed is ineffective to satisfy the exhaustion requirement. In addition, "[p]rison officials are entitled to require strict compliance with an existing grievance procedure." *Hemphill v. New York*, 198 F. Supp. 2d 546, 549 (S. D.N.Y. 2002). See *Byas v. New York*, 2002 U.S. Dist. LEXIS 13072, No. 99 CIV. 1673 (NRB), 2002 WL 1586963, at *2 (S. D.N.Y. June 17, 2002) ("Permitting a plaintiff to bypass the codified grievance procedure by sending letters directly to the facility's superintendent would undermine the efficiency and the effectiveness that the prison grievance program is intended to achieve.")

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. n2 During the relevant time period, section 6(A) provided that the following matters were grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division [*19] and Department.
2. The existence or substance of policies, rules and procedure of the unit, division and Department ....
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the *Americans with Disabilities Act*, except as noted herein.
6. Property loss or damage.

Nicholson's claims of unconstitutional treatment and conditions of confinement, denial of payment and interference with his access to the grievance process are included within the list of grievable matters at items 3 and 5. Thus, Nicholson was required to fully exhaust his administrative remedies as to each of these claims before he filed this action.

n2 The Administrative Directives are written guidelines, promulgated pursuant to *Connecticut General Statutes § 18-81*, establishing the parameters of operation for Connecticut correctional facilities. See *Beasley v. Commissioner of Corrections*, 1997 Conn. Super. LEXIS 1440, Nos. CV 952059, CV 962176, 1997 WL 263723, at *4 (Conn. Super. Ct. May 12, 1997). The Administrative Directives are analogous to the Program Statements promulgated by the Bureau of Prisons ("BOP"). Courts have taken judicial notice of the BOP Program Statements. See *Antonelli v. Ralston*, 609 F.2d 340, 341 n. 1 (8th Cir. 1979); *Gleave v. Graham*, 954 F. Supp. 599, 605 (W. D.N.Y. 1997). See also *United States v. Penn Foundry & Mfg. Co.*, 337 U.S. 198, 215, 93 L. Ed. 1308, 69 S. Ct. 1009, 113 Ct. Cl. 691 (1949) (Douglas, J., concurring) (official communications disclosing policy, such as reports, rules and regulations of an agency, are reliable and authoritative and need not be proven); *Christman v.*

*Skinner, 468 F.2d 723, 726 (2d Cir. 1972)*(proper for trial court to take judicial notice of state prison regulations concerning books and magazines); *Hernandez v. N.Y. City Dep't of Corr., 2003 U.S. Dist. LEXIS 2664, 2003 WL 542116*, at *3 (S. D.N.Y. Feb. 18, 2003) (taking judicial notice, absent objection, of DOC Inmate Grievance Resolution Program Directive); *Carter v. McGinnis, 320 F. Supp. 1092, 1094 (W. D.N.Y. 1970)* (taking judicial notice of New York State Department of Correction disciplinary rules and regulations). Thus, this court takes judicial notice of Connecticut Department of Correction Administrative Directive 9.6.

[*20]

The defendants argue that Nicholson's grievance is untimely. Administrative Directive 9.6, section 10(G), requires that a grievance be filed within thirty days from the occurrence of the incident. Nicholson was taken to restrictive housing on April 8, 2002. His grievance is dated May 12, 2002. The subject of the grievance, however, appears to be Nicholson's placement in the H-2 disciplinary unit on April 13, 2002, not the initial placement in restrictive housing on April 8. Thus, insofar as Nicholson's complaints in this action relate to his placement in the H-2 disciplinary unit, his grievance was timely filed. The defendants' motion to dismiss on the ground of failure to exhaust administrative remedies is denied with respect to Nicholson's placement in the H-2 disciplinary unit.

The grievances relating to the April 13, 2002 placement in the H-2 unit are the only grievances attached to the complaint. Nicholson has not attached evidence to his complaint, or even alleged or even argued in opposition to the motion to dismiss, that he filed grievances relating to his claims regarding (1) the circumstances surrounding his removal from his cell and transfer in handcuffs to restrictive [*21] housing on April 8, (2) the failure to pay him for his prison job, or (3) the interference with his access to the inmate grievance process. Thus, the defendants' motion to dismiss is granted as to each of the foregoing claims because Nicholson failed to exhaust his administrative remedies before commencing this action. However, the dismissal of these claims is without prejudice to Nicholson filing an amended complaint provided he demonstrates in any such amended complaint that he did in fact file institutional grievances regarding these claims.

2. Official Capacity Claims for Damages

The defendants next argue that all claims for damages against them in their official capacities are barred by the *Eleventh Amendment*.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the *Eleventh Amendment*. See *Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684, 73 L. Ed. 2d 1057, 102 S. Ct. 3304 (1982)*. Section 1983 does not override a state's *Eleventh Amendment* immunity. See *Quern v. Jordan, 440 U.S. 332, 342, 59 L. Ed. 2d 358, 99 S. Ct. 1139 (1979)*. [*22] The *Eleventh Amendment* immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See *Kentucky v. Graham, 473 U.S. 159, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985)*. A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See *Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n. 11, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984)*.

Nicholson has named the defendants in their individual and official capacities. He does not specify whether he seeks damages from them in their individual or official capacities. Because an award of damages against the defendants in their official capacities is barred by the *Eleventh Amendment*, the motion to dismiss is granted to the extent that the complaint may be construed as seeking damages from the defendants in their official capacities.

3. Claim for Unconstitutional Transfer to H-2 Unit

The only claims for which Nicholson exhausted his administrative remedies are those based upon his transfer to the H-2 unit despite that fact that he had not been found guilty of a disciplinary [*23] infraction and was not serving any disciplinary sanctions. The defendants argue that these allegations fail to state a claim upon which relief may be granted. The court agrees.

The *Eighth Amendment* prohibits the infliction of "cruel and unusual punishment," *U.S. Const. Amend. VIII*, and it applies to the states through the Due Process Clause of the *Fourteenth Amendment*. *Robinson v. California, 370 U.S. 660, 666-67, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962)*. After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the *Eighth Amendment*. *Ingraham v. Wright, 430 U.S. 651, 670, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977)*. To prove a violation of the *Eighth Amendment*, therefore, an inmate must show "(1) that the deprivation is 'objectively sufficiently serious' such that the plaintiff was denied the 'minimal civilized measure of life's necessities, 'and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary

and wanton infliction of pain.'" *Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003)*, quoting *Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)*; [*24] see *Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)*. Not every governmental action affecting the interests or well-being of a prisoner is actionable under the *Eighth Amendment.* "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986)*. The Second Circuit, in addressing the needs protected by the *Eighth Amendment*, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978)*, rev'd on other grounds, *Bell v. Wolfish, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)*; *Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981)*. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman, 452 U.S. 337, 347, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981)*.

Nicholson has not alleged facts sufficient to state [*25] a claim for violation of the *Eighth Amendment's* prohibition on cruel and unusual punishment. He does not allege that his confinement in the H-2 unit was inhumane in any way or that it deprived him of adequate food, clothing, shelter, sanitation, medical care or personal safety. Nor has he alleged any objectively serious conduct on the part of the defendants that evinces anything more than, at best, an "ordinary lack of care" for his interests and concerns. *Whitley v. Albers, 475 U.S. at 319.* Accordingly, the defendants' motion to dismiss Nicholson's claims based on the *Eighth Amendment* is granted.

In addition, an inmate has no inherent right to remain in any particular correctional facility or area within a correctional facility. See *Olim v. Wakinekona, 461 U.S. 238, 248, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983)* (inmates have no right to be confined in a particular state or a particular prison within a given state). The transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules." *Meachum v. Fano, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976).* [*26] See *Russell v. Scully, 15 F.3d 219 (2d Cir. 1993)* (inmates have no due process interest in being confined in a certain location within a prison). See generally *Asquith v. Department of Corrections, 186 F.3d 407, 410, 411 (3d Cir. 1999)* (holding that inmates have no protected liberty interest in remaining in a preferred correctional facility); *Frazier v. Dubois, 922 F.2d 560, 561-62 (10th Cir. 1990)* (holding that inmates generally are not entitled to due process before transfer); *Berdine v. Sullivan, 161 F. Supp. 2d 972, 974 (E. D. Wis. 2001)* ("a prisoner has no liberty interest in avoiding transfer to another prison, be it out-of-state, more restrictive, or owned and run by a private corporation"). "Prison administrators ...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish, 441 U.S. 520, 547, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)*.

Because Nicholson has no protected liberty interest in avoiding transfer to another correctional facility [*27] or another unit within the same correctional facility, his constitutional rights were not violated by his transfer to the H-2 unit. In addition, without a protected liberty interest, Nicholson has no constitutional right to a pre-transfer hearing under the *Due Process Clause.*

Nicholson also fails to allege facts sufficient to state a claim that the failure to hold a disciplinary hearing while he was confined in the H-2 unit violated his right to due process. To state such a claim, the Supreme Court requires that Nicholson demonstrate that he possessed a protected liberty or property interest and that he was denied that interest without being afforded due process of law. See *Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996).* Nicholson bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. See *Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).* If he is unable to show the existence of a protected interest, the claim must be dismissed regardless whether the defendants acted in accordance with the requisite procedures. See *id. at 317-18.*

In *Sandin v. Conner, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995),* [*28] the Supreme Court established the appropriate standard for determining the existence of a protected liberty interest in due process claims involving prison disciplinary hearings. The Court held that a protected liberty interest generally will arise only where, as punishment for alleged misconduct, a prisoner is involuntarily placed in confinement which is "'qualitatively different' from the punishment characteristically suffered by a person convicted of a crime and results in 'stigmatizing consequences.'" *Id. at 479 n. 4* (quoting *Vitek v. Jones, 445 U.S. 480, 493-94, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980)).* Thus, to show that a liberty interest is sufficient to invoke the protections of the *Due Process Clause*, a prisoner must establish both that his resulting confinement or restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"

Case 3:02-cv-00665-DFM   Document 29-3   Filed 05/10/2004   Page 12 of 15

Page 19
2003 U.S. Dist. LEXIS 22165, *

and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. *Sandin*, 515 U.S. at 484; see *Frazier, 81 F.3d at 317*.

Nicholson is not challenging [*29] the procedures used at a disciplinary hearing. Rather, he challenges his confinement in the H-2 unit without first being afforded a disciplinary hearing or without having a hearing while confined in the unit. However, because Nicholson's challenge is to an alleged punishment without due process, the court considers the claim under the test set forth in Sandin.

Nicholson was held in the H-2 unit for twenty-seven days, from April 13, 2002, until May 10, 2002. Confinement in segregation is confinement that an inmate should reasonably anticipate. See *Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993)*; see also *Rosario v. Selsky, 1995 U.S. Dist. LEXIS 19175, No. 94 Civ. 6872, 1995 WL 764178*, at *3 (S. D.N.Y. Dec 28, 1995) (holding that 120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison). Thus, Nicholson has not alleged facts demonstrating imposition of a sanction qualitatively different from ordinary prison life.

The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship. However, "the decisions [*30] in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." *Williams v. Keane, 1997 U.S. Dist. LEXIS 12665, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677*, at *6 (S. D.N.Y. Aug. 25, 1997) (citing cases). See also *Fine v. Gallow*, No. 3: 97cv497(SRU), *2000 WL 565232*, at *9 (D. Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days confinement in punitive segregation and fifteen days confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship); *McNellis v. Meachum*, Civ. No. 2: 92cv936 (PCD) (D. Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

Because Nicholson was held in the H-2 unit for only twenty-seven days, his due process claim fails as a matter of law. Accordingly, the defendants' motion to dismiss Nicholson's due process claims regarding his transfer [*31] to the H-2 unit is granted.

Finally, Nicholson fails to state a claim for denial of equal protection of the laws based upon his confinement in the H-2 unit. The *Equal Protection Clause* provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This provision does not mandate identical treatment for each individual; rather it requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985)*.

"To state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" *Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir. 1988)* (citation omitted). State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. *City of Cleburne, 473 U.S. at 439*. All other classifications are valid if they are "rationally related to a legitimate state interest." *Id. at 440*. [*32] The court does not apply a heightened standard of review to prisoner claims because prisoners "either in the aggregate or specified by offense" are not a suspect class. *Lee v. Governor of New York, 87 F.3d 55, 60 (2d Cir. 1996)*.

Nicholson does not allege that he is a member of a suspect class and, as determined above, his confinement in the H-2 unit does not violate a fundamental right. Thus, to assert an equal protection claim, he must allege that he was treated differently from other inmates in similar circumstances and that the unequal treatment was the result of intentional discrimination. Nicholson alleges that he was transferred to the H-2 unit improperly because inmates are assigned to that unit only after they have been found guilty of disciplinary infractions.

Nicholson attaches to his complaint statements from two inmates stating that they were sent to restrictive housing during the investigation into various incidents unrelated to the matter for which Nicholson was sent to restrictive housing. Following the investigation, these two inmates were returned to the I-pod in which Nicholson was originally housed. Although Nicholson alleges that defendant [*33] Carter told him that he would not return to I-pod, he does not indicate the reason for Carter's statement. Nicholson also attaches to his complaint a note from defendant Cleaver stating that Nicholson was transferred from restrictive housing to the H-2 unit as an unassigned inmate until a bed was available in I-pod. Nicholson has thus provided evidence attached to his own complaint indicating a non-discriminatory reason for his continued stay in H-2 unit, and he has alleged no facts suggesting that the defendants intentionally discriminated against him. Thus, Nicholson

has not alleged facts demonstrating or from which the court could infer that he was denied equal protection of the laws relating to his transfer to and continued stay in the H-2 unit.

The defendants' motion to dismiss is, therefore, granted as to each of the constitutional claims that Nicholson asserts relating to his transfer to, and continued stay in, the H-2 unit. However, Nicholson may file an amended complaint regarding those claims if he can allege facts from which the court could reasonably infer that his confinement in the H-2 unit constituted an atypical and significant hardship and/or that the reasons for [*34] the delay in returning him to I-pod were pretextual and that the defendants intentionally discriminated against him in causing that delay.

Because, as stated previously, all of Nicholson's other federal law claims were dismissed for failure to exhaust administrative remedies, the court need not consider the other grounds for relief raised by the defendants.

D. State Law Claims

Nicholson states in his complaint that he also brings claims for violation of rights secured by the Connecticut Constitution.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966). The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. See *id.* at 726. In [*35] addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. See *28 U.S.C. § 1367(c)(3)*; *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity- will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Spear v. Town of West Hartford*, 771 F. Supp. 521, 530 (D. Conn. 1991) ("absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of"), aff'd, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819, 121 L. Ed. 2d 33, 113 S. Ct. 66 (1992).

The court has granted the defendants' motion to dismiss as to all federal claims contained in the complaint. The court declines to exercise supplemental jurisdiction over any remaining state law [*36] claims.

IV. Conclusion

Nicholson's Motion for Injunctive Relief [doc. # 20] is DENIED. Defendants' Motion to Dismiss [doc. # 24] is GRANTED without prejudice to Nicholson filing an amended complaint provided he can allege and demonstrate in any such amended complaint that he exhausted his administrative remedies regarding the claims that have been dismissed today for failure to exhaust, or if he can allege facts from which the court could reasonably infer that his confinement in the H-2 unit constituted an atypical and significant hardship and/or that the reason proffered for the delay in transferring him back to I-pod was pretextual and that in causing that delay the defendants intentionally discriminated against him. Any amended complaint must be filed within twenty (20) days from the date of this order. All claims for declaratory and injunctive relief are DISMISSED pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)*. The court declines to exercise supplemental jurisdiction over Nicholson's state law claims.

The Clerk is directed to close this case. Should Nicholson file an amended complaint as directed, the Clerk's [*37] Office will reopen the file.

SO ORDERED this 19th day of September, 2003, at New Haven, Connecticut.

Mark R. Kravitz

United States District Judge

HECTOR ARRIOLA v. LT. EADY

Case No. 3:01CV2302(CFD) (WIG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 15954

August 26, 2003, Filed

DISPOSITION: Amended complaint was dismissed.

CORE TERMS: correctional, moot, motion to dismiss, injunctive relief, injunctive, strip, filed, Eleventh Amendment, declaratory relief, state policy, pro se, incarcerated, exhausted, searched, female, amend, parte

COUNSEL: [*1] Hector Arriola, PLAINTIFF, Pro se, New Haven, CT USA.

For Eady, Lt, HTFD Corr CTR, DEFENDANT: Peregrine Alban Zinn-Rowthorn, Attorney General's Office, Hartford, CT USA.

JUDGES: Christopher F. Droney, United States District Judge.

OPINIONBY: Christopher F. Droney

OPINION: RULING ON MOTION TO DISMISS

The plaintiff, Hector Arriola, is currently confined at the New Haven Correctional Center in New Haven, Connecticut. He brings this civil rights action pro se pursuant to *28 U.S.C. § 1915* alleging that on September 26, 2001, he was strip searched at the Hartford Correctional Center in the presence of the defendant, a female correctional employee. The defendants move to dismiss the amended complaint. For the reasons that follow, the amended complaint is dismissed and the motion to dismiss is denied as moot.

Standard of Review

When considering a *Rule 12(b)* motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*; *Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998)*. [*2] Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See *Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)*; *Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)*. "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996)* (quoting *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)* (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." , *Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993)*. In reviewing this motion, the court is mindful that the Second Circuit "ordinarily requires the district courts to give substantial leeway to pro se litigants." *Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992)*. [*3]

Facts

The plaintiff, Hector Arriola ("Arriola"), was incarcerated at the Hartford Correctional Center in September 2001. Arriola alleges that on September 26, 2001, he was strip searched by two male correctional officers in the presence of Lieutenant Eady, a female supervisor who was on duty at the time. Arriola claims that Lieutenant Eady violated his *Fourth Amendment* right to privacy. Arriola alleges that he suffered emotional injuries as a result of the search.

Discussion

The defendant has filed a motion to dismiss on four grounds. As a preliminary matter, however, the court notes that the amended complaint fails to include a request for relief. On May 21, 2002, the court issued an Order notifying Arriola that his complaint was deficient because it did not include a request for relief and did not demonstrate that he had exhausted his administrative remedies. (See doc. # 4.) The court ordered Arriola to file an amended complaint that included a claim for relief and a demonstration of exhaustion. Arriola filed his amended complaint on May 29, 2002. Although Arriola included evidence that he had exhausted his

Case 3:02-cv-00665-DFM    Document 29-3    Filed 05/10/2004    Page 15 of 15

Page 10
2003 U.S. Dist. LEXIS 15954, *

administrative remedies prior to filing suit, he again did [*4] not include a request for relief in the section of the amended complaint entitled "G. REQUEST FOR RELIEF." Accordingly, Arriola has failed to comply with *Federal Rule of Civil Procedure 8(a)* and an order of this court.

Arriola does include a reference to requested relief in connection with the institutional grievances he filed concerning the strip search. (See Am. Compl. at 6.) The relief sought, however, is injunctive relief. Because the strip search occurred at the Hartford Correctional Center in 2001, defendant Eady is still employed at the Hartford Correctional Center, and Mr. Arriola is now at the New Haven Correctional Center, any claim for injunctive relief against defendant Eady is moot. The Second Circuit has held that an inmate's request for declaratory and injunctive relief becomes moot when the inmate is discharged or transferred to a different correctional institution. See *Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983)* ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"); *Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976)* (request for injunction or restraining [*5] order is moot where prisoner is no longer incarcerated at same institution).

Additionally, though it is not clear from the amended complaint whether Arriola also names the State of Connecticut Department of Corrections ("DOC") as a defendant, to the extent Arriola seeks monetary damages or other retroactive relief against the DOC, that relief is barred by the *Eleventh Amendment.* See, e.g., *Kentucky v. Graham, 473 U.S. 159, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985).*

However, under the doctrine of *Ex parte Young, 209 U.S. 123, 159-60, 52 L. Ed. 714, 28 S. Ct. 441 (1908),* "the *Eleventh Amendment* does not preclude suits against state officers for injunctive relief, even when the remedy will enjoin the implementation of an official state policy." Erwin Chemerinsky, Federal Jurisdiction 419 (4th ed. 2003). "State officers have no authority to violate the Constitution and laws of the United States [and thus,] their illegal acts are stripped of state authority . . . ." Id. at 420. Accordingly, should he wish to amend his complaint, Arriola may seek prospective injunctive or declaratory relief from an ongoing violation of the Constitution or federal [*6] law against the appropriate official of the DOC in his or her official capacity. See *Ex parte Young, 209 U.S. at 159-60.* The appropriate official is a person with the ability to enforce the allegedly unconstitutional policy against Arriola. See id. (state officials who threaten to enforce an unconstitutional state policy may be enjoined by a federal court).

Conclusion

The amended complaint is DISMISSED without prejudice for failure to comply with the Federal Rules of Civil Procedure and an Order of this court. See *Fed. R. Civ. P 8(a)* and *41(b).* Any claims for injunctive and/or declaratory relief against the defendant Lieutenant Eady are DISMISSED as moot pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii).* The defendant's Motion to Dismiss [doc. # 8] is DENIED as moot.

This dismissal is without prejudice to Arriola moving to amend his complaint to add an appropriate request for relief and name an appropriate defendant within twenty-one days of the date of this order.

SO ORDERED in Hartford, Connecticut, this 26th day of August 2003.

Christopher [*7] F. Droney

United States District Judge