UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN ALLEN                          :

         v.                         :      PRISONER
                                    :      CASE NO. 3:00CV1823(DJS)(TPS)
JOHN ARMSTRONG, et al.[1]           :
                                    :

RULING AND ORDER

Plaintiff John Allen ("Allen") is a Hawaii-sentenced inmate currently confined at the Red Onion State Prison in Pound, Virginia.  He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915.  Allen alleges that he was denied his First and Fourteenth Amendment right of access to the courts during his incarceration at Northern Correctional Institution in Somers, Connecticut, pursuant to an Interstate Corrections Compact. Defendants Armstrong, Gomez, Myers, Murphy, Coates, Faneuff, Gresham and DiGennaro ("the DOC defendants") have filed a motion to dismiss the amended complaint.  In response, Allen has filed a motion for partial summary judgment.  For the reasons that follow, the DOC defendants' motion is granted and Allen's motion is denied without prejudice.

I.    Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and

_____

[1]The named defendants are John Armstrong, Giovanny Gomez, Larry Myers, Brian Murphy, T. Coates, W. Faneuff, M. Gresham, Robyn DiGennaro, Sydney Schulman, Jane Starkowski and Peter Downs.

draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). The Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

II.  Facts

The court accepts as true the following facts taken from the amended complaint.

Allen is a Hawaii-sentenced inmate who was incarcerated in

2

Connecticut from November 1996 through November 2000[2] pursuant to an Interstate Corrections Compact.

Connecticut Department of Correction Administrative Directives provide that there is no law library at Northern Correctional Institution available for inmate use. The resource area in the day room used by the inmates sentenced to death cannot be visited by other inmates.

In November 1996, Allen submitted two Level 1 grievances seeking access to the law library and return of confiscated Native American religious ceremonial items. In January 1997, Allen submitted an inmate request asking why he had not received a response to his grievances. The grievance coordinator could not confirm receipt of the grievances and instructed Allen to resubmit them, which he did in February 1997. In March 1997, Allen attempted to submit Level 2 grievances. He again was instructed to resubmit the Level 1 grievances. Allen took no further action with regard to these two grievances.

In January 1997, while he was in Connecticut, a case Allen had filed in federal court in the District of Hawaii was dismissed.

_____

[2]In his amended complaint, filed February 10, 2003, Allen provides the date he was transferred to Connecticut and states that he currently is incarcerated at Northern Correctional Institution in Somers, Connecticut. This is incorrect. In his response to the motion to dismiss, Allen indicates that he was transferred to Virginia in November 2000. In addition, documents in the court file confirm that Allen has not been in Connecticut since, at the latest, January 2001.

Allen requested physical access to the resource area several times, beginning in July 1999. The request was refused. In addition, his request for Hawaii state legal materials to challenge his Hawaii conviction was refused because the Connecticut Department of Correction did not possess these materials. Allen also was refused a copy of the Prisoner's Self-Help Litigation Manual. In May 2000, Allen's request to borrow materials from the resource area for use in his cell was denied.

Allen first contacted Inmates' Legal Assistance Program ("ILAP") in July 1999. ILAP will not provide legal assistance to prisoner unless they can demonstrate a prima facie case. Allen objected to having to send copies of his documents to ILAP for review and requested copies of cases and other research materials on a variety of topics. ILAP refused this request. ILAP also showed Allen's documents to correctional officials.

In March 2000, Allen was placed on abuse of grievance status after he filed five grievances in one week. This status precluded him from filing more than one grievance per month.

III. Discussion

A.    Allen's Motion for Partial Summary Judgment

As an initial matter, the court considers Allen's motion for partial summary judgment. Rule 56(a)1, D. Conn. L. Civ. R., provides: "There shall be annexed to a motion for summary judgment a document entitled "Local Rule 56(a)1 Statement," which sets forth in separately numbered paragraphs a concise statement

4

of each fact as to which the moving party contends there is no genuine issue to be tried."

Allen has not filed such a statement with his motion. Thus, the motion for partial summary judgment is denied without prejudice. The court considers the memorandum in support of the motion as Allen's opposition to the DOC defendants' motion to dismiss.

B.    The DOC Defendants' Motion to Dismiss

The DOC defendants move to dismiss this action on seven grounds: (1) the claims against the DOC defendants in their official capacities are barred by the Eleventh Amendment, (2) Allen's denial of access to courts claim is insufficient, (3) any claim based on the dismissal of Allen's Hawaii case is time-barred, (4) Allen has not sufficiently alleged the personal involvement of most of the DOC defendants in the majority of his claims, (5) Allen's conspiracy claim is insufficient, (6) Allen's claims for declaratory and injunctive relief are moot and (7) the DOC defendants are protected by qualified immunity.

1.    Eleventh Amendment Immunity

The DOC defendants first argue that all claims for damages against them in their official capacities are barred by the Eleventh Amendment.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its

5

sovereign immunity under the Eleventh Amendment.  <u>See</u> <u>Florida</u>
<u>Dep't of State v. Treasure Salvors</u>, 458 U.S. 670, 684 (1982).
Section 1983 does not override a state's Eleventh Amendment
immunity.  <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).  The
Eleventh Amendment immunity which protects the state from suits
for monetary relief also protects state officials sued for
damages in their official capacity.  <u>See</u> <u>Kentucky v. Graham</u>, 473
U.S. 159 (1985).  A suit against a defendant in his official
capacity is ultimately a suit against the state if any recovery
would be expended from the public treasury.  <u>See</u> <u>Pennhurst State</u>
<u>Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101 n.11 (1984).

Allen does not indicate in the case caption the capacity in
which he named the defendants, but seeks both injunctive relief
and damages.  Because an award of damages against the DOC
defendants in their official capacities is barred by the Eleventh
Amendment, the motion to dismiss is granted to the extent that
the complaint may be construed as seeking damages from the DOC
defendants in their official capacities.

2.    <u>Claims for Declaratory and Injunctive Relief</u>

Allen also seeks declaratory and injunctive relief, which
would be awarded against the defendants in their official
capacities.  The DOC defendants argue that this relief is moot
because Allen no longer is confined in a Connecticut correctional
institution.

The Second Circuit has held that an inmate's request for

6

declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. <u>See</u> <u>Mawhinney v. Henderson</u>, 542 F.2d 1, 2 (2d Cir. 1976). <u>See also</u> <u>Martin-Trigona v. Shiff</u>, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. <u>See, e.g.,</u> <u>McAlpine v. Thompson</u>, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement); <u>Lavado v. Keohane</u>, 992 F.2d 601, 605 (6th Cir. 1993) (holding that inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit).

Allen, a Hawaii-sentenced inmate, has been transferred to a Virginia correctional facility. Thus, all claims for declaratory and injunctive relief are moot. The DOC defendants' motion to dismiss is granted as to all claims for declaratory and injunctive relief. All possible claims for relief against the

DOC defendants in their official capacities have been dismissed.

### 3.    Access to Courts Claims

In his amended complaint, Allen alleges that he was denied access to courts primarily by the DOC defendants' refusal to permit him access to the resource area for death-sentenced inmates and failure to provide him Hawaii statutes and cases. The DOC defendants contend that Allen's access to courts claims are insufficient.  In response, Allen states that his claim is not that he was denied access to courts, but that his right to equal protection of the laws was violated in his attempt to exercise his right of access to courts.  Because Allen cannot amend his complaint in a memorandum,[3] the court considers both the access to courts claim and the equal protection claim.

In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right.  The Court held that to show that the defendants violated his right of access to the courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct.  See id. at 349.  As an illustration, the Court noted that if an inmate were able to show

_____

[3]See Natale v. Town of Darien, No. CIV. 3:97CV583 (AHN), 1998 WL 91073, at *4 n. 2 (D. Conn. Feb. 26, 1998) (holding plaintiff may not amend complaint in memorandum of law) (citing Daury v. Smith, 842 F.2d 9, 15-16 (1st Cir. 1988)); Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 987 (S.D.N.Y. 1989) (same).

that, as a result of the defendant's action, he was unable to file an initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, he could state a claim for denial of access to the courts. See id. at 351. The Court, however, specifically disclaimed any requirement that prison officials ensure that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. See id. at 355.

Allen alleges that the DOC defendants refused him physical access to the resource area for death-sentenced inmates. Denial of access to the resource area, without more, is insufficient to state a claim for denial of access to the courts. Law libraries and legal assistance programs do not represent constitutional rights in and of themselves. They only are the means to ensure "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. at 351 (internal quotation marks omitted). Thus, prisoners must demonstrate "actual injury" in order to have standing to bring a claim for denial of access to the courts. See id.

In addition, because inmates have no independent constitutional right to a law library, Allen's facial challenge to the Department of Correction policy denying non-death-sentenced inmates access to the resource area is without merit.

Allen states that he required Hawaii state legal materials to file a petition for writ of habeas corpus challenging his Hawaii conviction and access to the resource area to respond to a motion in a pending case in the District of Hawaii and file a civil action challenging the conditions of confinement at Northern Correctional Institution. Allen alleges that he was informed that the resource area did not contain any Hawaii state legal materials. Thus, the court assumes that Allen's "actual injury" for this claim is his alleged inability to file an action challenging the conditions of confinement at Northern Correctional Institution or his inability to respond to the motion in his pending case.

The DOC defendants argue that any claim for denial of access to the courts based upon the dismissal of Allen's case in the District of Hawaii is time-barred. That argument will be considered separately below.

Connecticut inmates' right of access to the courts for civil actions is provided by legal assistance from ILAP. See Connecticut Department of Correction Administrative Directive 10.3(3), www.doc.state.ct.us/ad/ch10. Allen alleges that he disagreed with ILAP's requirements and did not want to submit documentation supporting his claims to ILAP attorneys. Allen's decision not to avail himself of the form of legal assistance provided is not attributable to the DOC defendants. Thus, Allen has not alleged facts demonstrating an actual injury required to

state a claim for denial of access to the courts.  In addition, the court notes that Allen was able to commence this action without difficulty while incarcerated in Connecticut.  The court can discern no reason why Allen could not have also filed a complaint alleging unconstitutional conditions of confinement.

In addition to denying him access to the resource area, Allen alleges that the DOC defendants failed to provide him Hawaii state legal materials to enable him to challenge his conviction.  This claim is without merit.  Although the DOC defendants had a duty to ensure that Allen had access to the courts, this duty does not include providing the law of another state.

Courts considering this issue have held that when a prisoner is transferred to another state pursuant to an Interstate Corrections Compact, the sending state remains responsible for ensuring that the prisoner has access to the law of the sending state.  See, e.g., Boyd v. Wood, 52 F.3d 820 (9th Cir. 1995) (holding that "sending state authorities maintain responsibility for providing state legal materials to their prisoners incarcerated in out-of-state facilities"); Clayton v. Tansy, 26 F.3d 980 (10th Cir. 1993) (holding that the sending state bears the burden of providing the required state legal materials for its prisoner incarcerated in a sister state); Rich v. Zitnay, 644 F.2d 41, 43 (1st Cir. 1981) (holding that state authorities housing prisoner in federal prison in another state remained

11

responsible for providing prisoner with access to state legal materials). Thus, the DOC defendants were not responsible for ensuring that Allen had access to Hawaii state legal materials. The DOC defendants' motion to dismiss is granted as to the denial of access to courts claims concerning the failure to provide Hawaii state legal materials and the inability to file an action challenging conditions of confinement at Northern Correctional Institution.

4.    Statute of Limitation

The DOC defendants also argue that any denial of access to courts claim based upon the dismissal of Allen's case in the district of Hawaii is time-barred. In response, Allen argues that the limitations period should be tolled during the period within which he attempted to exhaust his administrative remedies.

The limitations period for filing a section 1983 action is three years. See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994)(holding that, in Connecticut, the general three-year personal injury statute of limitations period set forth in Connecticut General Statutes § 52-577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983). Prisoners are deemed to have filed a complaint on the day they give the complaint to prison officials to be mailed to the court. See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (citing Houston v. Lack, 487 U.S. 266, 270 (1988)).

Judgment entered in Allen's case in the District of Hawaii

12

on January 25, 1997.[4]  Thus, the limitations period expired on
January 25, 2000.  Allen signed this complaint and, presumably,
gave it to prison officials for mailing on September 18, 2000.
Thus, unless there are any applicable tolling provisions, the
complaint was filed nearly eight months too late.

     "[Q]uestions of tolling . . . are governed by state law."
Schmidt v. Devino, 106 F. Supp. 2d 345, 350 (D. Conn. 2000).  "A
statute of limitations may be tolled as necessary to avoid
inequitable circumstances.  Equitable tolling applies as a matter
of fairness where a [party] has been prevented in some
extraordinary way from exercising his rights." Iavorski v. INS,
232 F.3d 124, 129 (2d Cir. 2000) (internal citations and
quotation marks omitted; alteration in original).  The Second
Circuit "has also recognized the applicability of equitable
tolling where resort to an agency is a jurisdictional
prerequisite to seeking review in federal court." Johnson v.
Nyak Hosp., 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation
marks omitted; citation omitted).

     Allen argues that the limitations period should be equitably
tolled during the time he spent trying to exhaust his
administrative remedies because 42 U.S.C. § 1997e(a) requires
that he exhaust his administrative remedies before filing an

---

     [4]The court takes judicial notice of the docket report in
Allen v. Neilson, et al., No. 95-CV-629 (D. Haw. Jan. 25, 1997),
a copy of which is attached to the DOC defendants' memorandum as
Exhibit B.

13

action in federal court.  Some courts have held that the
exhaustion requirement tolls the limitations period for filing a
section 1983 action.  See, e.g., Johnson v. Rivera, 272 F.3d 519,
522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir.
2000); Harris v. Hegmann, 198 F.3d 153, 157-59 (5th Cir. 1999).
The Second Circuit has not addressed this issue.

Although the Second Circuit has applied equitable tolling
when "resort to an agency is a jurisdictional prerequisite" to an
action in federal court, that doctrine is inapplicable to the
exhaustion requirement of section 1997e(a).  In the Second
Circuit, the exhaustion requirement is not jurisdictional.
Rather, it is considered an affirmative defense.  See Jenkins v.
Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) (noting that "a
defendant in a prisoner § 1983 suit may also assert as an
affirmative defense the plaintiff's failure to comply with the
PLRA's requirements [that plaintiff first exhaust all
administrative remedies]"); see also, e.g., Reyes v. Punzal, 206
F. Supp. 2d 431, 433 (W.D.N.Y. 2002) ("in the Second Circuit,
failure to comply with the PLRA's exhaustion requirement is
viewed as an affirmative defense . . . and . . . defendant bears
the burden of proving plaintiff's failure to comply with the
exhaustion requirement")(citations omitted); Hallett v. New York
State Dep't of Correctional Serv., 109 F. Supp. 2d 190, 196-97
(S.D.N.Y. 2000) (same); Cuoco v. U.S. Bureau of Prisons, No. 98
CIV. 9009(WHP), 2000 WL 347155, at *8 (S.D.N.Y. Mar. 31, 2000)

14

("Exhaustion of administrative remedies under the PLRA is not
jurisdictional, . . . but rather is an affirmative defense").
Thus, Allen's argument for tolling the statute of limitations is
unavailing.

In addition, the court cannot discern any extraordinary
circumstances that prevented Allen from commencing a federal
action regarding this claim.  The motion for summary judgment in
the Hawaii case was filed on October 1996, while Allen was
confined in Hawaii.  He was on notice before he reached
Connecticut that his response was to be filed on or before
December 16, 1996.  Despite his transfer, Allen never sought an
extension of time to respond to the motion, leave to file a late
response or reconsideration of the decision granting the motion.
The court docket report reveals that Allen never even informed
the court of his change of address.  Thus, the court concludes
that Allen failed to act diligently with regard to that case.

Allen also does not allege any facts suggesting that he
acted with due diligence to exhaust his administrative remedies
with regard to this claim.  Allen alleges that, between November
1996 and March 1997, he encountered difficulty filing a grievance
regarding denial of access to a law library.  He appears to have
abandoned his attempts in March 1997 and did not try to file a
lawsuit regarding this claim for over three years.  He waited
over two years, until July 1999, to seek permission to use the
resource area and contact ILAP and until May 2000 to request

15

copies of legal materials for use in his cell.

Even if the court were to apply equitable tolling, the only time that would be tolled is from January 25, 1997, the date judgment entered until the end of March 1997, when Allen abandoned his attempts to exhaust his administrative remedies. This period of approximately two months, would not save this claim. The amended complaint demonstrates that Allen failed to act with due diligence during the entire time he seeks to have tolled. See Valverde v. Stinson, 224 F.3d 129, 134 n.4 (2d Cir. 2000) ("Reasonable diligence is typically a factor in an equitable tolling inquiry.").

The DOC defendants' motion to dismiss is granted on the ground that the claim for denial of access to the courts based upon Allen's alleged inability to respond to a motion for summary judgment is time-barred.

5.   Access to Grievance Procedure

Allen alleges that the DOC defendants failed to comply with the time limits, specified in Administrative Directive 9.6, for responding to his grievances thereby impeding his access to the courts. In addition, Allen contends that his placement on abuse of grievance status prevented him from exhausting his administrative remedies and, therefore, from commencing an action in federal court.

"A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would

16

result in the constitutionalizing of every state rule, and would not be administrable." Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993)(citing Engle v. Isaac, 456 U.S. 107 (1982)), overruled in part on other grounds by Thompson v. Keohane, 516 U.S. 99, 111 (1995). This court agrees with the rationale of the Sixth Circuit and concludes that any claim that the DOC defendants failed to follow the grievance procedures set forth in Administrative Directive 9.6 does not demonstrate the denial of a constitutionally or federally protected right and, thus, is not cognizable in this civil rights action. Any claim for failure to comply with institutional policy or rules is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Further, to the extent that the complaint may be construed to contend that abuse of grievance status prevented him from filing a section 1983 action in federal court, the argument is without merit. Section 1997e(a) requires inmates to exhaust available administrative remedies before commencing an action in federal court. If an inmate cannot file administrative grievances, that administrative remedy is not available to him. Thus, Allen could have filed an action in federal court and argued that he had no available administrative remedies.

6. Equal Protection Claim

In response to the motion to dismiss, Allen states that he has asserted not a claim of denial of access to the courts, but rather a claim that he was denied equal protection of the law

17

because death-sentenced prisoners have access to the resource area while he does not and because the DOC defendants provide Connecticut state legal materials to prisoner but have not provided him Hawaii state legal materials.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This provision does not mandate identical treatment for each individual; rather it requires that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

"To state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir.1988) (citation omitted). State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. City of Cleburne, 473 U.S. at 439. All other classifications are valid if they are "rationally related to a legitimate state interest." Id. at 440. The court does not apply a heightened standard of review to prisoner claims because prisoners "either in the aggregate or specified by offense" are not a suspect class. Lee v. Governor of New York, 87 F.3d 55, 60 (2d Cir.1996).

Allen is not a member of a suspect class. Thus, to assert

18

an equal protection claim, he must allege that he was treated differently from other inmates in similar circumstances and that the unequal treatment was the result of intentional discrimination.

Allen argues that the distinction between inmates who have been sentenced to death and inmates, like Allen, who have been sentenced to life with the possibility of parole is arbitrary. This court disagrees. Death-sentenced inmates are not similarly situated to other inmates. Their impending execution is a reason to treat them differently. Allen has not alleged that he was treated differently than other non-death-sentenced inmates, either in-state or out-of-state, with regard to physical access to the resource area for death-sentenced inmates. Thus, he fails to allege any facts supporting a claim for violation of his rights under the Equal Protection Clause with regard to access to the resource area.

Regarding his claim for denial of Hawaii state legal materials, the appropriate comparison is between Allen's treatment and the treatment of other out-of-state inmates. A review of the complaint reveals that Allen has not alleged that he was treated differently than other out-of-state inmates with regard to access to legal materials from states other than Connecticut. The only reference to other inmates is a statement that a Connecticut inmate was provided Connecticut legal materials. Thus, Allen fails to allege any facts supporting a

19

claim for violation of his rights under the Equal Protection

Clause with regard to access to Hawaii state legal materials.

### 7.    Personal Involvement

The DOC defendants next contend that Allen has failed to

allege the personal involvement of many of the defendants in the

majority of his claims.  The court considers this argument only

with regard to Allen's claims that have not been addressed above.

Allen alleges that a letter to a Native American rights

organization was delayed in being mailed.  In addition, he

alleges that two letters from Native American legal rights

organizations were opened outside of his presence.  In addition,

he alleges that he was denied carbon paper and a pencil with an

eraser.

It is settled law in this circuit that in a civil rights

action for monetary damages against a defendant in his individual

capacity, a plaintiff must demonstrate the defendant's direct or

personal involvement in the actions which are alleged to have

caused the constitutional deprivation.  See Wright v. Smith, 21

F.3d 496, 501 (2d Cir. 1994).  "A supervisor may not be held

liable under section 1983 merely because his subordinate

committed a constitutional tort."  Leonard v. Poe, 282 F.3d 123,

140 (2d Cir. 2002).  Section 1983 imposes liability only on the

official causing the violation.  Thus, the doctrine of *respondeat*

*superior* is inapplicable in section 1983 cases.  See Blyden v.

Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

> [A] supervisor may be found liable for his
> deliberate indifference to the rights of
> others by his failure to act on information
> indicating unconstitutional acts were
> occurring or for his gross negligence in
> failing to supervise his subordinates who
> commit such wrongful acts, provided that the
> plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his]
> injury.

Leonard, 282 F.3d at 140.

Because only claims for damages remain in this action, Allen

must allege facts demonstrating the personal involvement of the

DOC defendants in these claims.  In his amended complaint, Allen

does not allege that any defendant opened his legal mail, ordered

that his mail be opened, delayed sending his letter or ordered

that the letter be delayed.  None of the defendants worked in the

mail room.  Without such allegation, the claim must be dismissed

without prejudice as to all DOC defendants.  Allen appears to

assert this claim under a theory of respondeat superior, which is

not cognizable under section 1983.

In addition, Allen alleges that he was denied carbon paper

and a pencil with an eraser.  He does not specify which defendant

denied him these items.  Thus, the claims are dismissed for lack

of personal involvement.

In addition, the court can discern no constitutional right

to carbon paper or a pencil with an eraser.  Thus, even if Allen

had identified the defendant involved, these claims are not

cognizable in a section 1983 action, and are dismissed pursuant
to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  To the extent that
Allen is claiming that the denial of carbon paper or a pencil
with an eraser impeded his access to the courts, he must, as
discussed above, identify an actual injury suffered as a result
of the denial these items.  Because Allen has not alleged an
actual injury suffered as a result of the denial of either item,
this claim is dismissed as well.

    8.    Conspiracy Claim

    Allen alleges that the DOC defendants conspired with ILAP to
deny him access to the courts.  The DOC defendant move to dismiss
this claim on the ground that the allegations are insufficient to
state a claim for conspiracy.

    A claim of conspiracy to violate civil rights requires more
than general allegations.  See Dwares v. City of New York, 985
F.2d 94, 99 (2d Cir. 1993) (citations omitted); see also Polur v.
Raffe, 912 F.2d 52, 56 (2d Cir. 1990) (vague, prolix allegations
without pleading any overt acts is insufficient to state a claim
of conspiracy); Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y.
1981) (vague and conclusory statements without specific facts are
not enough).  This requirement is not changed by the Supreme
Court's decision in Leatherman v. Tarrant County Narcotics
Intelligence & Coordination Unit, 507 U.S. 163 (1993), which
proscribes the application of "heightened pleading standard" in
civil rights cases.  Cases decided after Leatherman continue to

22

hold that a claim of conspiracy must contain more than mere

conclusory allegations to withstand a motion to dismiss.    Rather

than constituting a heightened pleading standard, the requirement

merely implements Rule 8(a)(2), Fed. R. Civ. P., which requires a

"short and plain statement of the claim showing that the pleader

is entitled to relief."    See Gyadu v. Hartford Ins. Co., 197 F.3d

590, 591 (2d Cir. 1999) (holding that vague, general or

conclusory allegations of conspiracy are insufficient to

withstand a motion to dismiss); Boddie v. Schnieder, 105 F.3d

857, 862 (2d Cir. 1997) (same).

Allen alleges that the defendants acted in conspiracy with

ILAP to deny him access to the courts because Connecticut

Department of Correction Administrative Directive 10.3 states

that ILAP attorneys will provide legal assistance if a Program

attorney determines that an inmate can state a prima facie case.

(See Am. Compl. ¶ 24.[5])    He also alleges that the DOC defendants

_____

[5]"Defendants Armstrong, Gomez, Myers, Murphy, Coates,
Faneuff, Gresham, and DiGennaro, have acted and are acting, in
collusion and with complicity, with Dept. of Correction contract
employees Schulman, Starkowski, and Downs, of ILA, to circumvent,
deny, hinder, impair, interfere with, or obstruct plaintiff's
access to the courts, and plaintiff's capability to research,
prepare, file, initiate, or pursue litigation and meritorious
claims that challenge conditions of confinement at NCI, through
Dept. of Correction, Administrative Directive 10.3 Legal
Assistance to Prisoners and restrictive policies, practices,
procedures, and requirements, for obtaining access to legal
assistance, primarily through contractual obligations and
requirements, which rely upon the arbitrary, capricious, and
subjective determination by ILA staff attorneys that sufficient
evidence or merit of a prima facie case has been established
prior to the providing of legal assistance, which precludes the

conspired with ILAP to prevent him from filing a lawsuit challenging various aspects of his confinement at Northern Correctional Institution.  (See Am. Compl. ¶ 43.[6])  Finally, he alleges that the DOC defendants conspired with ILAP to interfere with his access to the courts by denying him legal materials, delaying action on grievances and breaching the confidentiality of his legal documents by requiring that he submit them to ILAP.  (See Am. Compl. ¶ 62.[7])  Although Allen includes lists of

---

effective and meaningful presentation or filing of claims deemed sufficient or meritorious to plaintiff's subjective determination since on or about November 15, 1996, until the present."

[6]"Defendants Armstrong, Myers, Murphy, Coates, Faneuff, Gresham and DiGennaro, have acted and are acting, in collusion and with complicity, with ILA, defendants Schulman, Starkowski, and Downs, to circumvent, deny, hinder, impair, interfere with, or obstruct plaintiff's access to courts, and plaintiff's capability to research, prepare, file, initiate, or pursue a totality of conditions of confinement civil complaint against NCI to prevent the violation of plaintiff's constitutional guarantees and rights of freedom of religious expression . . . through discontinuation of ILA to evaluate plaintiff's claims or issues, and denial of any type of legal assistance through denial, failure, or refusal to provide plaintiff legal research materials, specifically, United States District Court, District of Connecticut court case law decisions, Second Circuit Court of Appeals court case law decisions, and Federal Rules of Civil Procedure, since July 19, 1999, until the present."

[7] Defendants Armstrong, Myers, Murphy, Coates, Faneuff, Gresham, and DiGennaro, have acted and are acting, in collusion and with complicity, with ILA, defendants Schulman, Starkowski, and Downs, to circumvent, deny, hinder, impair, interfere with, or obstruct plaintiff's access to the courts through the denial of privileged confidentiality of plaintiff's legal documentation, consisting of Unites States District Court, District of Hawaii Court Orders and Rulings, Inmate Requests, and responses from defendants, processed and unprocessed Inmate Grievances, Memos from defendants, official letter from Correction officials; the denial of carbon paper to prepare legal pleadings; photo or xerox

purported violations of his rights and objectionable actions, there are no allegations of specific actions taken by any of the DOC defendants.  The court concludes that Allen's claim of conspiracy primarily is based upon the inclusion in the administrative directive of ILAP's requirement that legal assistance will be provided to inmates with meritorious claims. These conclusory allegations are insufficient to withstand the DOC defendants' motion to dismiss.  See Gyadu, 197 F.3d at 591. The DOC defendants' motion to dismiss is granted as to all claims for conspiracy.

C.    Defendants Schulman, Starkowski and Downs

Service has not yet been effected on the remaining defendants, Sydney Schulman, Jane Starkowski and Peter Downs. These defendants are affiliated with ILAP, the organization that provides legal assistance to Connecticut inmates.  Although the claims against these defendants are not included in the DOC defendants' motion to dismiss, the court considers the claims pursuant to the requirement that the court dismiss at any time a complaint that fails to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915(e)(2)(B)(ii).

------------------------------------------------------------

copying of legal pleadings over extended thirty (30) day time period; denial of use of pencil with eraser to prepare legal pleadings; opening of attorney-client Legal Mail-outside presence of inmate; withholding of forwarding of -Legal Mail-; through Administrative Directive 10.3 Legal Assistance to Prisoners and Administrative Directive 10.7 Inmate Communications, contractual obligations and requirements since July 19, 1999, until the present."

25

In his amended complaint, Allen alleges ILAP's policy, that no legal assistance will be provided unless an ILAP attorney reviews relevant documents and determines that the prisoner can state a prima facie case, violates his right to "privileged confidentiality" of legal documents, and prevented him from filing a lawsuit to challenge the conditions of confinement at Northern Correctional Institution.  In addition, he alleges that ILAP's delay in responding to his letters resulted in the dismissal of a case he had pending in the District of Hawaii. Allen also alleges that ILAP revealed the contents of confidential legal documents.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was deprived of a constitutionally or federally protected right by a person acting under color of state law.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).  Traditionally, acting under color of state law required "that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  Id. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).  In Lugar v. Edmonson Oil Co., 457 U.S. 922 (1982), the Court held that the action under color of state law requirement may also be established when a defendant's conduct satisfies the state action requirement of the Fourteenth Amendment.  See id. at 935.  Conduct constitutes state action

26

when a deprivation of rights is "caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." Id. at 937.

Generally, a public employee acts under color of state law when she acts in her official capacity or exercises her responsibilities pursuant to state law. See West, 487 U.S. at 50. The Supreme Court has recognized one exception to the general rule. "[A] public defender does not act under color of state law when performing the traditional functions of counsel to a criminal defendant." Polk County v. Dodson, 454 U.S. 312, 317 (1981). See also Housand v. Heiman, 594 F.2d 923, 924-25 (2d Cir. 1979). The Court distinguished a public defender from the typical state employee or state actor. "While performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his 'professional independence,' which the State is constitutionally obliged to respect." West, 487 U.S. at 50 (quoting Polk County, 454 U.S. at 321-22). "[W]hen representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for the purposes of § 1983 because he 'is not acting on behalf of the State; he is the State's adversary.'" Id. (quoting Polk County, 454 U.S. at 323 n.13). See Fine v. City of New York, 529 F.2d 70, 74 (2d

27

Cir. 1975) (private attorney representing defendant in state criminal proceeding did not act under color of state law). Similarly, attorneys appointed to represent indigent litigants are not considered to be acting under color of state law. <u>See, e.g.</u>, <u>Peavey v. Polytechnic Institute of New York</u>, 775 F. Supp. 75 (E.D.N.Y. 1991) (private attorney), <u>aff'd</u>, 969 F.2d 1042, <u>cert. denied</u>, 506 U.S. 922 (1992); <u>Neustein v. Orbach</u>, 732 F. Supp. 333 (F.D.N.Y. 1990) (Legal Aid attorney does not act under color of state law (citing <u>Lefcourt v. Legal Aid Society</u>, 445 F.2d 1150, 1157 (2d Cir. 1971)). If, however, a public defender conspires with a state official to deprive a criminal defendant of his constitutional rights, the public defender is deemed to have been acting under color of state law. <u>See</u> <u>Tower v. Glover</u>, 467 U.S. 914, 920-22 (1984).

This court has previously held that attorneys working for ILAP pursuant to a contract with the State of Connecticut to provide legal assistance in civil matters to inmates incarcerated in Connecticut are not state actors under section 1983. <u>See</u> <u>McCarthy v. Armstrong, et al.</u>, Case No. 3:96cv517 (PCD) (HBF) (D. Conn. May 28, 1998) (ruling granting defendants' motion to dismiss civil rights complaint because Schulman not acting under color of state law).

The three ILAP attorneys named as defendants in this case were acting as private attorneys in performing obligations under the contract with the Department of Correction. Thus, they were

not acting under color of state law.  Allen alleges that these defendants conspired with the DOC defendants.  The only allegation in support of the conspiracy is that the attorneys followed the ILAP policy of providing legal assistance only after reviewing an inmate's evidence to be sure that the claim was meritorious.  The fact that an attorney has acted in compliance with his professional obligations and reviewed documentary evidence before providing legal advice does not support a claim of conspiracy.  Thus, the claims against defendants Schulman, Starkowski and Downs are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

IV.  Conclusion

The DOC defendants' Motion to Dismiss [doc. #39] is **GRANTED**. Allen's Motion for Partial Summary Judgment [doc. #44] is **DENIED** without prejudice.  The claims against defendants Schulman, Starkowski and Downs, and the claims regarding denial of carbon paper and a pencil with an eraser are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  The Clerk is directed to enter judgment in favor of the defendants and close this case.

SO ORDERED this _1st_ day of ~~July~~ Aug, 2003, at Hartford, Connecticut.

_____
Dominic J. Squatrito
United States District Judge

29