FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT      2005 OCT 25  P 4: 36

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| REGINALD HARRIS | PRISONER |
| V | NO. 3;02CV0665 |
| JOHN ARMSTRONG ET AL. | OCTOBER 18, 2005 |

## OPPOSITION TO DEFENDANTS
## SUMMARY JUDGMENT FILED

The plaintiff moves this court to answer the defendants summary judgments "Statement of material facts not in dispute."

1.) True
2.) Inaccurrate information. Defendants exhibits date back to years before 1981.
3.) False, plaintiff's date of birth was January 31, 1955 -just fifty. Also sentenced under the old law whereas monthly , release date changes.
4.) False, plaintiff medical history is well charted. The complexiety come about in attempting to paint a negative picture by extracting only what's believed to support and defend.
5.) False, as stated above (4) false information , inaccuracies and improper exhibits are offered throughout what the defendants offered to support what's claimed as 'Material facts not in dispute'. As here defendants claim plaintiff has seen kidney specialist on a regular basis. Then offered exhibits C-274, C-302, C-329, C-336, not one of these exhibits support or confirm this as a fact.

(1.)

6.) False, it is very incredible how a doctor, a professional who in his offered testimony , claimed to had known and dealt with the plaintiff's medical situations , would lable him a "**Diabetic**". And not just once. The defendants offered 1,832 exhibits and nowhere is it charted or even diagnosed that he is or ever was a diabetic.

7.) False, plaintiff is not continually monitored for blood pressures. Exhibits offered confirm the fact the readings offered were ceased long before he became a dialysis patient.

8.) True, defendants documented over 30 years of medical history therefore , it is only fair and just , that the plaintiff do familiarize the court with the correctional departments policies and proceedures concerning medical. Firstly , inmates earn only $5.00 a week. All hygeine products , stationary or snacks must be purchased out of that same $5.00. When an inmate is sick , he must sign a request to be seen at sickcall. This cost him $3.00 per visit. With the prisons overcrowding , one may not be seen for a week. By then he may be well and refuse to attend sickcall , thus saving the cost of $3.00 for nothing.

Plaintiff being on dialysis goes to the outside center whereas his health is monitored and medicines are ordered and changed accordingly. Most times the prison medical hasn't recieved the notice of change and still continue to offer the plaintiff meds he'd been advised not to take. As he attempts to explain , its noted that he is refusing. Exhibits C-1807, C-1809, C-1814, C-1817.

Dialysis <u>treatments</u> were never refused, what was refused was the risk of lif & limb. Defendants were authorizing the cuffing of plaintiff's left wrist against doctors and other medical staffs orders. Plaintiff has his shunt and fistula surgically implanted in his left wrist and arm. This is where the dialysis machine is linked up to dialyze him. And the two times defendants refer to plaintiff had refused treatments because he wanted a <u>new</u> jumpsuit is false. The officers gave him a jumpsuit off the floor that was there to absorb a puddle of muddy water and snow that was drug inside from the officers boots. Plaintiff tried to explain the risk of his shunt and fistula getting infected. This fell on deaf ears, and so it was written plaintiff refuses dialysis treatment again. Then two days later at his next dialysis treatment scheduled date, he was offered the exact same jumpsuit from the same area of the floor. Plaintiff tried to remedy the matter by contacting outside sources as the head of medical and the commissioner. See exhibit C-542.

9.) True, as stated in above (8) answer. Outside hospital documents per call of the doc to ready the slot for the next patient.

10.) True, again as stated in above (8) answer. Plaintiff refused to be cuffed against doctors orders on left wrist.

11.) True

12.) Again plaintiff reminds the court of the defendants false and inaccurrate statements throughout their material facts. In most of their answers and facts, they deny their very fact they'd claimed earlier. As in above (5) exhibit C-329 is offered to support claims of being seen by specialist. Now

here it's offered to support claims of refusing again. C-329.
13.) False, their exhibits of C-911, C-1082 states nothing of Blanchett orders of mental health interviews.
14.) False, plaintiff was ordered by dialysis medical personnel not to continue taking said medicines, fluid restrictions. See exhibit. C-819.
15.) True-life and limb is threatened by restraints against Drs orders.
16.) True- Once arrival at dialysis it was a issue about being cuffed while on the dialysis machine as never before, and this act is inhumane. Upon calling their supervisor, she not aware of how the trip was handled, ordered to keep the cuffs on. Plaintiff refused to indure such unbelievable act of cruelty. Upon returning at the prison, plaintiff was placed in the segregation unit. And given a report for being beligerent and boistous and disobedient to the officer. When plaintiff seen the officer later he inquired why did he make such a false report against him. The officer told him he was sorry but, his hands were tied. His boss ordered him to write the false information. So plaintiff never wishing to return to segregation whereas his meals were never correct. And his medications were so out of line, it was harmful for him to be in there, especially for nothing. So he'd refused to allow that officer to take him out of the prison anywhere. Plaintiff felt if this officer couldn't stand up for truth, then he couldn't afford the risk of going to segregation for nothing again. Exhibit C-533
17.) True
18.) True- must adhere to prescribed diet. Especially going on the dialysis machine for $3\frac{1}{2}$ hours. C-715, C-716, C-717, C-718, C-721, C-723.

(4.)

19.) False, plaintiff only requested a "Clean" jumpsuit to wear to dialysis. Detailed above number (8). Plaintiff tried to remedy and prevent such attitude and behavior , so the Commissioner and the Warden were addressed. C-631.
20.) True - as answered thoroughly in above (15). Defendant uses a few of those same exhibits are used here in support.
21.) True
22.) To be confirmed.
23.) "           "
24.) "           "
25.) "           "
26.) "           "
27.) False, the Utilization Review Committee did <u>not approve</u> the plaintiff's chronic dialysis , there is no such thing. The UCONN kidney specialist through vigorous testing and such diagnosed the plaintiff to have incurred chronic renal failure. And surely would be in need of Hemo Dialysis treatment in order to sustain life. Exhibits C-440, C-441,
28.) True- as well as other prisons. C-911, C913, C-914 all support the facts plaintiff's claim included Northern as he'd listed the Commissioner John Armstrong for overall treatment of all prisons in the state of Connecticut.
29.) True- part of denial process.
30.) True- UCR board recommended or ordered plaintiff continue on the dialysis machine treatments. Although plaintiff had been on the machine for 4 years , the UCR board , per Dr Pesanti stated "transplant is not first approach to CRF in our facilities." Therefor denied on 8-23-00. See exhibit C-1284 this was in response to the Nephrologist recommendation to

(5.)

the UCR and the Hartford Hospital transplant unit for the plaintiff to get transplant. Exhibit C-1289.

Then one year later, dialysis Doctor Carney suggested that it be reconsidered for plaintiff to have kidney transplant. It was also systematically denied. See exhibit C=1248

Also Nephrologist request reconsideration of transplant for plaintiff with support attachments to show the need. C-1249.

As plaintiff's complaint states , he was systematically denied a kidney transplant. Therefor plaintiff's recourse was to sue doctor Tung and Commissioner Armstrong. Plaintiff was told by the dialysis personnel of the age eligibility for recieving a transplant and therefor advised him to do begain some kind of proceedures for such and that they will assist by contacting associates at the transplant unit.

31.) To be confirmed
32.) True.
33.) To be confirmed.
34.) First approach was not plaintiff's issue. The issue is that after the plaintiff and several professionals requested that plaintiff get transplant , the UCR or Commissioner would get in the way of good health. Or needed medical transplant. And according to Constitutional law and the Connecticut prisoners right book , prisoners should not be denied operations or other needed medical surgeries. Evidence to support this is included in plaintiff's memorandum of law in his summary judgment.

(6.)

35.) False, never personally treated or seen by Dr Tung , except the once when he denied plaintiff the needed meds for his psoriasis. And Dr Wright was the one who seen and treated the plaintiff. Number (38) question actually answers this one. See exhibits C-1058, C-1061.

36.) False, patients were going to outside hospitals. C-380, C-604.

37.) True, but the plaintiff's complaint makes mention of Dobson blatantly ignoring and down grading grievances. Plaintiff do have exhibits of such included in his summary judgments material facts.

38.) Tru- as stated above in number (35). Exhibits C-1058, C-1061.

39.) To be confirmed. Once dialysis personnel prescribes medicines it is the duty of the prisons doctor to comply and prescribe.

40.) False, here defendants claims a physical was refused but prescribed treatment was discussed , exhibit C-1060 was offer-ed in support. This exhibit says nothing in this regaurd. And offered exhibit D-30 which is only a statement given that reflects to see C-1060.

41.) True- plaintiff was able to make the trip duly because the "No cuff" on left wrist was adhered to.

42.) States plaintiff continued to recieve routine dialysis. And offered exhibit C-1059 (nothing there of dialysis concerns) and C-1060 (again, nothing of dialysis concerns). True, whenever the "NO CUFF" on left wrist is followed.

43.) To be confirmed.

44.) False, defendant claimed dialysis was refused and offered exhibit C-1062. In fact on that exhibit it clearly states that plaintiff went to dialysis - and they'd spoke with a Nancy while he was being treated. Defendants offer exhibits

(7.)

D-32 to support , but that is only a statement of someone who isn't a defendant. And never the less , that shows something contrary to their claim. It is rather complicated to understand if the defendants are attempting to defend or confuse.

45.) True, when and if as stated in several above answers...if attempts to cuff left wrist , see exhibits C-1082, C-1031 , C-1040, C-882. Or if medications were ordered whiled at dialysis to "Stop taking them" and shortly thereafter a offered same meds by prison medical. And usually a memo or consultation form follows instructed the decease of said med.

46.) True, meds had been increased but the delivery didn't comply, and after no assistance from the prison medical , then did report it to the dialysis personnel. They in turn knowing the importance of said med , would call or write something that addressed the matter immediately. A notice to Dr Tung that Dr Wright gave meds that day 1/25/02, the same 1/25/02 date of the consultation form. Problem remedied. C-1173

47.) True, see above answer number (46)

48.) True, plaintiffs diet has been an issue at all prisons and still is , nobody wishes to adhere to the strictness that is required. It would require additional work for the kitchen to prepare daily. So compomises were made amoungst the staff against the desired menu of all renal failure patients.

49.) True, plaintiff having no , to little sucess in dealing with the prison medical department. So if any of his issues were dialysis related , he'd see that personnel when treated. And promptly they would see that everything was attended to.

50.) True, but as the prisons doctor was responsible for making judgment calls for prisoners medical needs or lack there of. As in the handcuff issue. C-524, C-1023, C-1027, C-1306

51.) To be confirmed, How could the Attorney General answer for Edward Blanchett who is appearantly answering for Dr Tung who suppose to be answering for Doctor Kaplan, who is in a completely different building of a different department and practice. In fact Dr Kaplan dosen't know where any of his prison patients are housed at because he deals with them at or through the MacDougall dialysis unit when they're there.

And secondly, plaintiff is not a diabetic nor never was. So it is very interesting to really value the answers of Ed Blanchett, as to the fact he dosen't even know the plaintiffs medical condition or adequate medical needs. So can his testimony be considered as **FACT,?**

52.) Continuation of above (51)., the outside professionals only know what the prison administration tells them as...yes, Mr Harris is refusing dialysis again! Never knowing the truth of the matter is Mr Harris is refusing to be cuffed and Killed by the prisons personnel. C-1082, C-1031, C-1040, C-882.

53. Continuation and runon of (51)&(52) of course there is no notation of Dr Tung jepordizing plaintiffs life in his medical record. <u>Who would write such a thing for record keeping</u> when everyone is in concurrance that it's the plaintiff who keeps refusing treatments.

54.) False, plaintiff is not a diabetic. In total the defendants offered 1,832 pages of exhibits. Nowhere in them does it say

(9.)

that plaintiff is a diabetic but, the two places that the testimony of Ed Blanchett write in his statement. And the blindly copied information of the attorney general.

56-57 False, these two facts are as basically the complete and whole package offered as material facts , entwined and a great deal false. First of all , dialysis lab work is done monthly for observation. The scores are printed out and discussed with the patients. And if new meds are to be ordered or disceased , it is told to them. Plaintiff will show exhibits in support in his summary judgment & material facts. The defendants offered exhibits C-1481, inwhich is nothing but the second page of something that only has the Dr Kaplans name and address on it.

58.) True

59.) True

60.) False, plaintiff dosen't have diabetes

61.) To be confirmed

62.) To be confirmed

63.) To be confirmed

64.) True

65.) True, plaintiff ask that the court notes the details of what is at risk for mistreatments and missed treatments as attorney general states "Could result in death , congestive heart failure and an number of other dire consequences". C-1298 this surely supports plaintiffs grief of missing his dialysis. Even once moved from one block to the next cuffed was hazzardous. See exhibit C-1310.

66.) - 71.) To be confirmed.

72.) False, supporting exhibits included in plaintiffs summary judgment and material facts.

73.)True
74.)True
75.)True
76.)True , skin unbearable without meds , ice chips to advoid risk of overloading of fluids when heated or too hot.
77.)True
78.)False, all diets including ice chips assist indurrance of good health and minimal risk of dangers , and comfort is key.
79.)True, she down graded , but as above (78) states the need were of dire urgency.
80.)False, as above (79)&(78) shows, it did place him in harms way
81.)True
82.)False, to the untrained , multi-vitamins seem very simple. But the facts is dialysis patients must take numbers of them per meal and with snacks to bind the food.(no kidney function If not adhered to phrosperous levels would kill them or at minimal...damage severely. C-905, C-733, C-730, C-1053
83.)Alarmingly false!!!, see above (82)
84.)True
85.)False, didn't recieve , as no nurses named.
86.)False
87.)Can't argue defendants belief , especially when she isn't trained to know the dire needs of any dialysis patients.Her speaking in (83) about those needs not being an emergency, says it all!
88.)False, plaintiff wouldn't be able to endure sitting connected to dialysis machine for 3½ hours as the skin on him was violently irritable coupled with the treatment drying him out that much more.
89.)True
90.)True
91.)To be confirmed.

(11.)

## DECLARATION UNDER PENALTY OF PERJURY

YOU MUST DECLARE UNDER PENALTY OF PERJURY THAT THE ANSWERS YOU HAVE GIVEN HEREIN ARE TRUE AND CORRECT. GIVING A FALSE ANSWER OR FALSE INFORMATION IN RESPONSE TO ANY QUESTION WILL SUBJECT YOU TO FEDERAL PERJURY CHARGES. 18 U.S.C. §1621 PROVIDES AS FOLLOWS:

Whoever..................................................

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under §1746 of Title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000.00 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

Understanding the above, I declare under penalty of perjury that the foregoing answers and information provided by me are true and correct.

Executed this ___18th___ day of _October, 2005_.

_Reginald Harris, Pro Se_
Signature of Petitioner/Plaintiff

Rev LDC 94

(12.)

**NOTARIZED AFFIDAVIT**

I hereby swear that to the best of my knowledge all answers given in this affidavit of opposition of defendants summary judgment and material facts , are true and accurrate. Sworn to on this 18 day of October , 2005.

*Reginald Harris*
Reginald Harris 13817

*J. Bache*
NOTARY PUBLIC

10/18/2005

JACQUELINE BACHAN
NOTARY PUBLIC
MY COMMISSION EXPIRES 8/31/2006

(13.)

## CERTIFICATION

I hereby certify that a copy of these answers to defendants summary judgment and material facts were mailed on this day 10/18/2005 to attorney general
Lynn D. Wittenbrink
110 Sherman Street
Hartford, Conn. 06106

*Reginald Harris*

Reginald Harris 13817
MacDougall Corr.
1153 East Street So.
Suffield, Conn. 06080